1   J. Noah Hagey, Esq. (SBN: 262331)
       hagey@braunhagey.com
2   Matthew Borden, Esq. (SBN: 214323)
       borden@braunhagey.com
3   Ronald J. Fisher, Esq. (SBN: 298660)
       fisher@braunhagey.com
4   J. Tobias Rowe, Esq. (SBN: 305596)
       rowe@braunhagey.com
5   BRAUNHAGEY & BORDEN LLP
    351 California Street, 10th Floor
6   San Francisco, CA 94104
    Telephone: (415) 599-0210
7   Facsimile: (415) 276-1808

8   Jonathan Kortmansky, Esq. (*pro hac vice* forthcoming)
       kortmansky@braunhagey.com
9   Pratik K. Raj Ghosh, Esq. (*pro hac vice* forthcoming)
       ghosh@braunhagey.com
10  BRAUNHAGEY & BORDEN LLP
    118 W 22nd Street, 12th Floor
11  New York, NY 10011
    Telephone:  (646) 829-9403
12  Facsimile:  (646) 829-9403

13  *Attorneys for Class Plaintiff Manish Aggarwal*
    *and Others Similarly Situated*

14                    **UNITED STATES DISTRICT COURT**

15                  **NORTHERN DISTRICT OF CALIFORNIA**

16                      **SAN FRANCISCO DIVISION**

17

18  | MANISH AGGARWAL, on behalf of himself and all others similarly situated, | Case No. 3:22-cv-4829 |
19  | | **CLASS ACTION COMPLAINT** |
    |                    Plaintiff, | |
20  | | **JURY TRIAL DEMANDED** |
    |          v. | |
21  | | |
    | COINBASE, INC. and COINBASE GLOBAL, INC., | |
22  | | |
23  |                    Defendants. | |

24

25

26

27

28

Representative Class Plaintiff Manish Aggarwal ("Plaintiff") on behalf of himself, and those similarly situated, alleges as follows against Coinbase, Inc. and its parent Coinbase Global, Inc. (collectively, "Coinbase"):

## INTRODUCTION

1.       This class action seeks to hold Coinbase, the country's largest cryptocurrency investment platform, accountable for security failures leading to the repeated theft of ordinary customer accounts.  Coinbase holds billions of dollars in consumer savings, and purports to safeguard those assets from robbery or theft.  The company exacts substantial fees and commissions for this service and is one of the most highly valued cryptocurrency service providers in the world.  However, Coinbase does a poor job of protecting its user accounts from unlawful intrusion and thievery.  And it does an even worse job of working to mitigate those thefts after they occur – forcing ordinary consumers to navigate a faceless and impenetrable automated "customer service" process that leads nowhere.  Coinbase is acutely aware of these problems and has paid large fines to regulators.  Yet the problems persist and account holders like Plaintiff continue to be fleeced by hackers with access to Coinbase's systems.

2.       Plaintiff purchased several hundred thousand dollars-worth of Bitcoin and, like any liquid investment, wanted to keep it safe and be able to access it and conduct further investments and transactions.  Plaintiff opened an account with Coinbase, the largest and most well-known cryptocurrency institution.  Plaintiff's account was an electronic "wallet" stored on Coinbase's allegedly secure servers.  He used the account like any other bank or investment holding to make transactions, withdrawals and additional investments.

3.       In April 2022, hackers gained access to Plaintiff's Coinbase account through no fault of his own and, after locking him out, drained it of more than $200,000 of his family's hard-earned savings.  When Plaintiff tried to alert Coinbase, the company routed him through its automated complaint processing—a recursive loop of impenetrable screens that prevented him from explaining his situation to any human being and was incapable of redressing the theft of his savings.  Plaintiff now brings this action so that he and countless others like him can be made whole, and so that others will not suffer similar misfortune.

**JURISDICTION AND VENUE**

4.      The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 because this action is brought pursuant to the Electronic Funds Transfer Act of 1978, 15 U.S.C. § 1693 *et seq*.  The Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

5.      The Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount of damages suffered by Plaintiff and alleged herein exceeds $75,000 and diversity of citizen exists between Plaintiff and Coinbase in that Plaintiff is a citizen of the State of Connecticut, while Coinbase is a corporate citizen of the States of California and Delaware.

6.      The Court also has subject-matter jurisdiction over the action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because minimal diversity exists between Class Members and Coinbase and because the amount in controversy exceeds $5,000,000, exclusive of interests and costs.

7.      Venue is proper in this District under 28 U.S.C. § 1391(d) because Coinbase has its principal place of business and maintains its executive officers in San Francisco, California and is registered with the California Secretary of State to do business in California.  Venue is also proper in this district under 28 U.S.C. § 1391(b)(2) and 15 U.S.C. § 22, because a "substantial part of the events or omissions" on which the claims are based occurred in this district where Coinbase's operations and witnesses are located.

**THE PARTIES**

8.      Plaintiff Manish Aggarwal is a Coinbase customer.  He is a citizen of the State of Connecticut.

9.      Defendant Coinbase, Inc., is a publicly-traded Delaware corporation with its headquarters and principal place of business in San Francisco, California.  Defendant Coinbase, Inc. is registered with the Secretary of State of California and has an agent for services of process in California.  Coinbase is the largest cryptocurrency exchange in the United States by trading volume and claims to have more than 98 million verified users.  Defendant Coinbase, Inc. is a wholly owned subsidiary of Defendant Coinbase Global, Inc.

10.     Defendant Coinbase Global, Inc. is a Delaware corporation with its headquarters and principal place of business in San Francisco, California.  Coinbase Global, Inc. is the parent company of Coinbase, Inc.  Unless specified otherwise, Coinbase, Inc. and Coinbase Global, Inc. are referred to collectively herein as "Coinbase."

11.     Coinbase is the largest cryptocurrency institution in the U.S. and its role in the American financial system is growing in importance.  In the last fifteen years, cryptocurrency has grown from a high-tech novelty to a major asset class into which ordinary American consumers and other investors have poured hundreds of billions of dollars.

12.     Coinbase has made billions of dollars by positioning itself as a trusted repository of consumers' funds and the "most secure" platform for buying and selling cryptocurrency.  Coinbase's website touts its "best-in-class" security practices, and it claims: "we're the only crypto exchange to have never been hacked."

13.     Coinbase is the most prominent cryptocurrency repository and trading platform for ordinary consumers across the country.  Like any bank or other financial institution holding billions of dollars of consumers' funds and managing electronic transfers from custodial accounts, Coinbase must repay stolen monies to consumers under the Electronic Funds Transfer Act ("EFTA"). Coinbase also bears liability under the duties it assumes as a bailee and for the representations it makes to the public, such as "we are required to safeguard customers' assets using bank-level security standards applicable to our wallet and storage systems."  Coinbase cannot shed those duties through buried disclaimer language on its website and should be required to make Plaintiff and all similarly situated consumers whole for their losses.

## FACTS

### A.     The Rise of Cryptocurrencies

14.     Cryptocurrencies are digital assets that use decentralized computer networks, rather than a nation's central bank or other issuing authority, to uphold them.

15.     Unlike traditional currency, cryptocurrencies rely on a digital ledger, which is a publicly available database listing the complete ownership and transaction history of every "coin." The ledger is protected by strong cryptography, meaning that it would be impossible for a

malicious actor to alter ownership information in the database using presently available technology. The secure ledger, combined with the limited supply of available coins, allows cryptocurrencies to function as a medium of exchange with which owners can purchase other assets (including, frequently, other cryptocurrencies).

16. Cryptocurrencies were first theorized beginning in the 1980s, but were not adopted widely until the last fifteen years. The most popular cryptocurrency today, Bitcoin, was launched in 2009.

17. In a short period of time, cryptocurrencies have gone from a novelty asset owned by a few tech-savvy early adopters to a major asset class. In 2010, in the first reported commercial transaction using Bitcoin, a buyer reportedly purchased a Papa John's pizza for 10,000 Bitcoin.

18. At today's prices, just twelve years later, the dollar value of that pizza would have been more than $200 million. Today, each Bitcoin is worth more than $20,000. The total market capitalization of Bitcoin alone is more than $390 billion. And the total market capitalization of all cryptocurrencies has been estimated at more than $2 trillion as recently as March 2022.

19. The astronomical growth of cryptocurrency as an asset class has been fueled in large part by ordinary American consumers. Cryptocurrency has gained popularity well beyond the early circles of technologically and financially sophisticated investors. Today, encouraged by platforms like Coinbase, ordinary consumers invest their savings and retirement plans in cryptocurrency, in addition to millions of others who invest in the hope of profiting from the "crypto revolution."

**B.    The Role of Coinbase**

20. To trade in cryptocurrencies, consumers rely on a new breed of financial institutions that act both as banks to hold their assets in a secure location and trading platforms to facilitate trading in the open market.

21. The most prominent and successful of these institutions is Coinbase. Combining the features of a bank, brokerage, and stock exchange, Coinbase acts as a custodian for customers' funds, allows customers to trade cryptocurrencies, and operates an exchange where trading occurs.

22. Coinbase was founded in 2012 and has quickly grown into the largest and most profitable institution in the world of cryptocurrency. At its initial public offering in 2021,

Coinbase's estimated value was reportedly $47 billion.  Today, Coinbase claims to have 98 million customers and handles customer trades totaling more than $309 billion on a quarterly basis.

23.     Coinbase's business model depends on persuading ordinary consumers to begin trading cryptocurrency.  Coinbase's annual report for 2021 touts its "simple onboarding process that allows retail users to sign up and quickly purchase their first crypto asset" and claims that Coinbase is "a primary on-ramp for customers' journeys into the cryptoeconomy."

24.     As part of these efforts, Coinbase also encourages people to invest their retirement savings in cryptocurrency through web advertisements like "The Crypto Guide to Retirement Savings (https://www.coinbase.com/learn/crypto-basics/retirement) and through its partnership with 401(k) plan provider ForUsAll.

**C.     Coinbase Advertises its Platform as Secure**

25.     Because it understands that public faith in the security of its platform is critical to the success of its business, Coinbase subjects consumers to a barrage of representations on its website stating that its cryptocurrency storage is secure, that it offers "best in class storage," has "industry-leading security," that it is the "most trusted crypto exchange," that it uses "state-of-the-art encryption," that "your assets are protected," and that it offers "multifaceted risk management programs designed to protect customers' assets."



**C** SECURITY

# The most trusted crypto exchange

98+ million users trust us, and so can you.

**Sign up now**

## Industry-leading security

Additional security options on all of your devices provide more ways to keep your crypto safe and secure.



## Your assets are protected

Your crypto is your crypto. It's that simple. Coinbase doesn't use, or lend, your assets without your permission. Also, we offer the most secure and multifaceted risk management programs designed to protect our customers' assets.

Learn more →

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# The proof is in our platform.

Here's why you can trust us:



## We're the largest public crypto company in the world

In April 2021, Coinbase became the largest publicly traded crypto company in the world. That means we operate with more financial transparency, and make our financial statements available each quarter.

Learn more →



# We use state-of-the-art encryption and security

The technology that powers our platform was developed with industry-leading security and encryption at its core. Our security team is constantly working to make sure you and your assets are protected from emerging threats.

## Most trusted. Most secure.

Learn why 89M+ people around the world trust us as their entry point into the cryptoeconomy.



# We offer the finest tools to protect your account

From auto-enrolled 2 factor-authentication (with security key support), password protection, to multi-approval withdrawals in Coinbase Vault, we provide powerful security features to all our users.

26.     Coinbase separately represents that each aspect of its services is secure:

**WALLET**

# Coinbase Wallet

Your key to the world of crypto

- Store all of your crypto and NFTs in one place
- Support for hundreds of thousands of tokens and a whole world of dapps
- Explore the decentralized web on your phone or browser
- Protect your digital assets with industry-leading security

**Download Coinbase Wallet**

# About Coinbase

We are building the cryptoeconomy – a more fair, accessible, efficient, and transparent financial system enabled by crypto.

We started in 2012 with the radical idea that anyone, anywhere, should be able to easily and securely send and receive Bitcoin. Today, we offer a trusted and easy-to-use platform for accessing the broader cryptoeconomy.

 **TRADE**

## Buy, sell, and store hundreds of cryptocurrencies

From Bitcoin to Dogecoin, we make it easy to buy and sell cryptocurrency. Protect your crypto with best in class cold storage.

**Sign up now**



## Store all of your NFTs

Safely store and easily view all of your Ethereum and Polygon NFTs right in your Wallet.

31.     Indeed, the front page of Coinbase's website explains that the purpose of the platform is to provide a place to "securely buy, sell, and manage hundreds of cryptocurrencies":



32.     Coinbase's representations are not limited to its own website. Coinbase's search engine marketing similarly represents that Coinbase is a secure location to store cryptocurrency. Below is Coinbase's search engine listing on Google:



33.     Similarly, Coinbase's social media advertising claims that Coinbase is the "safest and most secure crypto experience" on the market:

34.     Coinbase has also represented to consumers that it has "never been hacked" and that it maintained insurance to protect their digital holdings. https://www.coinbase.com/security (captured July 6, 2022):

> **How is my crypto stored?**
>
> Thanks to our best-in-class security practices, we're the only crypto exchange to have never been hacked. We strategically store over 98% of deposits offline in secure cold storage facilities that are guarded and monitored 24/7. We also maintain an extensive insurance policy to protect assets held online.

35.     Plaintiff read Coinbase's representations about Coinbase's security measures on Coinbase's website and in its marketing materials and relied on those representations in purchasing and storing cryptocurrency with Coinbase.

**D.     Coinbase Admits that It Must Employ Bank-Level Security**

36.     In addition to its advertising, Coinbase admits to investors that it must provide bank-level security.  In a recent quarterly SEC disclosure statement, Coinbase represented that "we are required to safeguard customers' assets using bank-level security standards applicable to our wallet and storage systems, as well as our financial management systems related to such custodial functions."  Coinbase Global, Inc., Quarterly Report (Form 10-Q), at 94 (August 9, 2022), (available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1679788/000167978822000085/coin-20220630.htm).

**E.     Coinbase's Representations About Security Are Material to Consumers**

37.     Coinbase well knows that its communications to the public about the security of its services are extremely important to consumers.  On May 10, 2022, during a quarterly earnings call, Coinbase co-founder and CEO Brian Armstrong explained that the reason Coinbase makes representations about its security features is to create a "competitive moat" that Coinbase uses to create a business advantage over competitors in the cryptocurrency industry.  May 10, 2022 First Quarter 2022 Earnings Call (available at

1  https://s27.q4cdn.com/397450999/files/doc_financials/2022/q1/Coinbase-Q1'22-Earnings-Call-

2  Transcript.pdf).  Mr. Armstrong went on to state:

3          It comes down to cybersecurity – we're storing more crypto securely
           for our customers. And so whenever people are coming into a new
4          industry, they generally want to go with the one that it's been around
           the longest, it's trusted by the most people, it has the most number of
5          users. Coinbase is really the only crypto company that's public in this
           environment. And we're storing such a large amount of crypto that I
6          think that's a defensible moat *because basically when people trust us,*
           *they store crypto with us*.
7

8  (*Id.* (emphasis added).)

9          38.     Coinbase is also well aware of the danger of hacking.  In describing risks that

10  potentially threaten its business in its 2021 Form 10-K, Coinbase stated: "cyberattacks and security

11  breaches of our platform, or those impacting our customers or third parties, could adversely impact

12  our brand and reputation and our business, operating results, and financial condition."  Coinbase

13  Global, Inc. 2021 Annual Report (Form 10-K) at 26 (filed Feb. 24, 2022) (available at

14  https://www.sec.gov/ix?doc=/Archives/edgar/data/0001679788/000167978822000031/coin-

15  20211231.htm).

16          39.     As Coinbase itself acknowledges, both in filings to the SEC as well as statements

17  made to its investors, these representations regarding security are material to consumers and

18  essential for Coinbase to maintain a competitive edge in the cryptocurrency industry.  Gaining the

19  trust of consumers by marketing its platform as the "most secure" is a critical element of

20  Coinbase's brand and competitive strategy.

21          **F.     The 2021 Coinbase Security Failure**

22          40.     Unfortunately, Coinbase's representations regarding the security of its platform have

23  proven untrue.  Despite claiming to be "the only crypto exchange to have never been hacked,"

24  Coinbase has been hacked and had customer funds stolen in multiple instances within the last two

25  years.

26          41.     Between March and May 20, 2021, attackers gained access to Coinbase customer

27  accounts and stole customers' funds by transferring them off the Coinbase platform.  The breach

28  affected more than 6,000 consumers.

42.     Coinbase acknowledged the 2021 security failure in a filing with the California Attorney General made pursuant to California's data breach statute, Cal. Civ. Code § 1798.82(a).[1]

43.     Prior to Coinbase's 2021 security failure, Coinbase used a two-factor identification security protocol using SMS (text messages).  Users would access the Coinbase app or website and would be asked to create a password meeting certain requirements.  During this process, Coinbase would require the user to provide a cellphone number.  Coinbase would text a one-time authentication code that the user would have to input to create the password for their Coinbase account.  Once the user input the code texted by Coinbase, Coinbase would then recognize the device and user's password as secure.  The same process applied for changing passwords: the user would have to input their old password and a new one-time authentication code texted by Coinbase.  By Coinbase's own admission, the attackers in the 2021 hack "took advantage of a flaw in Coinbase's SMS Account Recovery process."

44.     Coinbase acknowledged it was aware that a security vulnerability in its platform allowed hackers to access its customers full name, email address, home address, date of birth, IP addresses for account activity, transaction history, account holdings, and account balance.

45.     Coinbase further admitted that it was aware that a security vulnerability in its platform allowed hackers to access its customers' accounts and change the email, phone number, or any other information associated with their accounts.

46.     Following the security breach, Coinbase claimed that it had "updated our SMS Account Recovery protocols to prevent any further bypassing of that authentication process."

47.     Coinbase also announced that it had refunded customers for the cryptocurrency they had lost from their accounts as a result of the 2021 hack.

---

[1] Coinbase, Inc. March 17, 2021 Data Breach Sample Notice (available at https://oag.ca.gov/system/files/09-24-2021%20Customer%20Notification.pdf).

**G.     Coinbase Fails to Render Its Accounts Secure, and Plaintiff's Money Is Stolen**

48.     Whatever security updates Coinbase may have made following the 2021 security failure have been insufficient to prevent customers from continuing to have funds stolen by hackers in the year since the 2021 incident.

49.     One measure Coinbase took was to encourage customers to use an outsourced security program called Google Authenticator.  Unlike text message-based authentication, Google Authenticator relies on a software application installed on a user's smartphone to deliver the authentication code, bypassing vulnerabilities in text message technology.  This measure did not render Coinbase's platform secure because it is Coinbase's own security that is lacking.

50.     Before using Coinbase, Plaintiff visited the website and read and relied on Coinbase's representations about its security.  Like all users of Coinbase, Plaintiff had to go to the Coinbase website because it provided him the instructions needed to set up his account.  He followed those instructions and relied on Coinbase's representations regarding the security of its systems.  Plaintiff is one of the Coinbase customers who implemented Google Authenticator at Coinbase's urging.

51.     Hackers nonetheless bypassed Coinbase's security and drained Plaintiff's account.

52.     Between February 2021 and April 2022, Plaintiff accumulated an investment in Bitcoin totaling approximately $200,000 in value, which he stored in his Coinbase wallet.

53.     On April 20, 2022, Plaintiff began having trouble logging into his account.  He attempted to reset his password through Coinbase's password reset system to no avail.  Relying on Coinbase's representations that its platform was secure, he believed the issue would be resolved soon.

54.     On April 24, 2022, Plaintiff received a call purporting to be from Coinbase acknowledging that he had had difficulty accessing his account and suggesting that he try resetting his password.  Later that day, Plaintiff again attempted to reset his password using Coinbase's system, but was unsuccessful.

55.     The same day, on April 24, 2022, all of Plaintiff's cryptocurrency was rapidly transferred to an external account.  Within a span of just 49 minutes, Plaintiff's account was

1   drained without his authorization through more than 6,000 small transfers of cryptocurrency

2   totaling approximately $190,000 in value.

3        56.     Unaware that his account had been emptied, Plaintiff tried in vain for days to regain

4   access to his account.  On April 25 and 26, 2022, Plaintiff called a Coinbase support line.  The

5   system refused to connect him with a human being; instead, he received a recorded message stating

6   that his phone number was not associated with his account.  That was inaccurate because Plaintiff

7   was using the same telephone number he had registered with his account.  It was also contrary to

8   Coinbase's representations on its website that users would be able to get help by phone from

9   Coinbase's team:



## Get the help you need, when you need it

You can always contact our support team by phone or messaging to speak with our virtual assistant, or depending on the hours, with a real live support agent. You can also check out our Help Center for quick solutions to common problems.

21        57.     On April 27, 2022, Plaintiff attempted to reach Coinbase through its online support

22   link.  He again could not speak with a human being; instead, he received an email stating that his

23   email address was not associated with his Coinbase account.  That was inaccurate because Plaintiff

24   was using the same email address he had registered with his account.

25        58.     Finally, Plaintiff was able to make contact with individuals at Coinbase.  On April

26   28, 2022, Coinbase finally put a hold on Plaintiff's account while it investigated the issue.  By that

27   time, it was too late to stop the fraudulent transfers.

59.     Coinbase refused to repay Plaintiff.  Nor did it remedy its internal security problems that led to Plaintiff's losses.

**H.     The Security Breaches as to Plaintiff's Accounts Are Endemic to Coinbase's System**

60.     After several frustrating days of being told that he did not have an account with Coinbase, Coinbase finally informed Plaintiff that his account had been emptied.  Coinbase also admitted to Plaintiff that whoever accessed the account had obtained the correct Google Authenticator code to log into the account.  This detail is important because Plaintiff logged into Coinbase through his phone, and his phone never left his control during the attack.

61.     Plaintiff is not aware of any viruses, worms, or other malware such that the security breach occurred on his end.

62.     Upon information and belief, Plaintiff was not victim to any third-party phishing attack or sim swap attack whereby hackers obtained his Coinbase login information or Google Authenticator security key.

63.     In light of these facts, the only explanation for how Plaintiff's account was emptied is that a third party—either a hacker or Coinbase employee—was able to see Plaintiff's Google Authenticator Code on Coinbase's system because Coinbase did not take sufficient care to prevent access to that information.

**I.     Coinbase Refuses to Make Plaintiff Whole**

64.     Coinbase has refused to restore the value of Plaintiff's account, unlike its restoration of funds to users in the 2021 security failure.

65.     As a result of Plaintiff's experience, it is clear that security issues continue to plague Coinbase's security procedures and that customers remain vulnerable to theft of their savings.

66.     It is also clear, both from Plaintiff's experience and from the 2021 security collapse, that Coinbase's marketing claims to be a "secure" platform that has "never [] been hacked" are false and misleading.  Coinbase knew that its claims to be a "secure" platform that had "never [] been hacked" were false and misleading but made those statements to induce Plaintiff and the Class to do business with Coinbase for Coinbase's pecuniary gain.

67.     Coinbase's intransigence in refusing to refund Plaintiff's losses may be explained by the unlawful disclaimer of liability in its User Agreement.  Despite its representations about security and that it maintains insurance to protect user accounts, buried in the middle of a user agreement totaling more than 45,000 words on the Coinbase website (in Section 8.2), the following provision purports to exculpate Coinbase for all liability for its own negligence:

> In no event shall Coinbase, its affiliates and service providers, or any of their respective officers, directors, agents, joint venturers, employees or representatives, be liable (i) for any amount greater than the value of the supported digital assets associated with your digital asset wallet at the time of the event or circumstance giving rise to your claim or (ii) for any lost profits, loss of goodwill or reputation, loss of data, diminution in value or business opportunity, any loss, damage, corruption or breach of data or any other intangible property or any special, incidental, indirect, intangible, or consequential damages, whether based in contract, tort, negligence, strict liability, or otherwise, arising out of or in connection with any use of the Coinbase site or the Coinbase services, or this agreement, even if Coinbase has been advised of or knew or should have known of the possibility of such damages, and notwithstanding the failure of any agreed or other remedy of its essential purpose, except to the extent of a final judicial determination that such damages were a result of Coinbase's gross negligence, fraud, willful misconduct or intentional violation of law.

(User Agreement Section 8.2.)

68.     This provision is unconscionable and unenforceable.  It is also illegal under California public policy prohibiting exculpation for negligence in contracts that affect the public interest, including contracts for bailment and banking relationships.

**J.     Coinbase's Security Failures Continue**

69.     Upon information and belief, consumers other than Plaintiff have suffered and continue to suffer security breaches and losses of funds similar to those experienced by Plaintiff. For example, on July 26, 2022, Mostafa El Bermawy reported that his Coinbase account had been drained of funds despite being protected by two-factor authentication, like Plaintiff's.  Mr. El

Bermawy further explained that, as with Plaintiff, Coinbase offered him little help. According to Mr. El Bermawy, as with Plaintiff, Coinbase continues to refuse to make him whole for his losses or provide significant information:



**Mostafa ElBermawy** @mbermawy · Jul 26
Current situation is, my Coinbase account was hacked despite the recommended 2FA, funds were stolen and Coinbase's immediate reply was kicking me off the platform without providing much information.

💬 4          🔁 4          ♡ 3          ⬆️



**Mostafa ElBermawy** @mbermawy · Jul 26
The response from Coinbase was shocking. I reached out to them and they replied by closing my account due to "an internal review process that led to a final decision to cancel my account."

💬 1          🔁 1          ♡ 1          ⬆️

**Mostafa ElBermawy** @mbermawy · Jul 26
They didn't elaborate much or share what triggered this review process. This means I can't get support from them and that the account history and everything has vanished. I could not see the transfers, activities or really anything to help track what happened.

💬 1          🔁          ♡ 1          ⬆️

70.     Other consumers have similarly complained that cryptocurrency was stolen from their Coinbase accounts despite them taking the precautions that Coinbase recommends:



71.     Users on internet forums such as Reddit have also recently reported similar experiences losing funds on Coinbase due to security compromises, despite use of Coinbase's recommended two-factor authentication.

72.     One Reddit user, posting to the /r/Coinbase community on Reddit, complained that "[m]y Coinbase account with Google authenticator enabled was just hacked." https://www.reddit.com/r/CoinBase/comments/99rbqd/my_coinbase_account_with_google_authent icator/ (captured August 18, 2022).

73.     In April 2022, another Reddit user similarly complained on the /r/Coinbase community on Reddit that despite using Google Authenticator, "[s]omeone was able to access my account without my authorization" which resulted in the user losing $10,000 worth of Bitcoin.

1    https://www.reddit.com/r/CoinBase/comments/tz88mt/hacked_coinbase_account_lost_10k/

2    (captured August 18, 2022).

3         74.    Coinbase's conduct alleged herein was fraudulent, oppressive, malicious and done

4    with conscious disregard of Plaintiff's and the Class's rights.  As a result of Coinbase's fraudulent,

5    oppressive, and malicious conduct, Plaintiff and the Class have suffered cruel and unjust hardship

6    in violation of their rights.

**CLASS ACTION ALLEGATIONS**

8         75.    This action is brought and may properly proceed as a class action pursuant to the

9    provisions of Federal Rule of Civil Procedure 23.

10        76.    Plaintiff seeks certification of a Class which is composed of and defined as follows:

> All current and former Coinbase users and/or consumers in the United
> States who registered for a Coinbase account from April 1, 2021
> through such time as Class notice is given, who maintained funds
> and/or cryptocurrency in their Coinbase accounts, and who were
> subsequently deprived of access to, or lost their funds and/or
> cryptocurrency.

15        77.    Excluded from the Class are Defendants' officers and directors, current or former

16   Coinbase employees, as well as their immediate family members, as well as any judge, justice, or

17   judicial officer presiding over this matter and members of their immediate families and staff.

18        78.    **Numerosity**: The number of Class members is so large that the joinder of all its

19   members is impracticable.  The exact number of Class members can be determined from

20   information in the possession and control of the Defendant, but based on publicly available

21   information, it appears that the number of class members is likely in the thousands.

22        79.    **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class.

23   Defendants failed to secure the accounts of customers, and thereby injured all members of the Class

24   in substantially identical fashion.

25        80.    **Adequacy**: Plaintiff will fairly and adequately protect the interests of the Class.

26   Plaintiff's interests are not antagonistic to or in conflict with the interests they seek to represent as

27   Class representatives.

28

81.     Plaintiff's counsel is experienced in prosecuting class actions, is committed to protecting consumers, and intends to prosecute this action vigorously.

82.     **Common Violations**: Defendants have acted or refused to act on grounds that apply generally to the class, including by failing to secure consumer accounts, and making inaccurate representations about their products to the public, and failing to provide meaningful customer service related to security breaches such that final injunctive relief is appropriate respecting the class as a whole.

83.     **Existence of Predominance of Common Questions of Fact and Law:** Numerous common issues of law and fact exist and predominate over questions affecting only individual members.  These issues include, without limitation:

    a.    Whether the requirements regarding transfers of electronic funds in the custodial accounts of consumers in the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA") apply to Coinbase;

    b.    Whether Defendants violated the EFTA;

    c.    Whether Regulation E, 12 C.F.R. § 1005.11, applies to Coinbase;

    d.    Whether Defendants violated Regulation E;

    e.    The nature, extent and mechanics of the customer service processes Coinbase makes available for consumers to address security breaches;

    f.    The sufficiency of the customer service processes that Coinbase makes available for consumers to address security breaches;

    g.    The nature, extent and mechanics of the security measures that Coinbase takes with regard to the accounts maintained on its system;

    h.    Whether Defendants were, or should have been, aware of potential vulnerabilities in their security;

    i.    The nature, scope and extent of the obligation that Coinbase owes to depositors and users of their system;

    j.    Whether Defendants failed to properly secure customers' Coinbase accounts, funds, and cryptocurrency;

k.    Whether Defendants owed a duty to safely care for and maintain the

cryptocurrency in the wallets of class members;

l.    Whether Defendants violated the duties of care that they owed to Plaintiff

and the Class;

m.    Whether Defendants' statements that the Coinbase system was secure were

materially false and misleading;

n.    Whether Section 8.2 of the Coinbase user agreement is illegal,

unconscionable or otherwise unenforceable;

o.    Whether consumers were harmed by Defendants' security breaches;

p.    Whether Defendants should have to repay the monies lost by the Class;

q.    Whether Defendants should be required to make restitution to the Class;

r.    Whether Defendants should be required to pay damages to the Class; and

s.    Whether exemplary damages should be assessed against Coinbase.

84.    These and other questions of law and fact are common to the Class and predominate over any questions affecting the Class members individually.

85.    Absent certification of a class, the equitable relief sought by Plaintiff will create the possibility of inconsistent judgments and/or obligations among Defendants.

86.    **<u>Superiority</u>**: A class action is also superior to other available methods for the fair and efficient adjudication of this controversy.  Requiring Class members to pursue their claims individually would invite a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on judicial resources.  Furthermore, as the damages suffered by the individual members of the Class may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the Class individually to seek redress of the wrongs perpetrated by Defendants.  Plaintiff knows of no difficulty that could be encountered in the management of this litigation that would preclude its maintenance as a class action.

# CAUSES OF ACTION

### First Cause of Action
**Against All Defendants**
**Violation of the Electronic Funds Transfer Act ("EFTA")**
**(15 U.S.C. § 1693 *et seq*.)**

87.     Plaintiff repeats and realleges the allegations of the Paragraphs above as if fully set forth herein.

88.     Defendants are "financial institutions" as defined by the EFTA because they are persons who, directly or indirectly, hold an account belonging to a consumer.

89.     Plaintiff and the Class are "consumers" as defined by the EFTA because they are natural persons.

90.     The Coinbase accounts owned by Plaintiff and the Class are "accounts" as defined by the EFTA because they are asset accounts established primarily for personal, family, or household purposes.

91.     The unauthorized transfers from Plaintiff and the Class's accounts were "unauthorized electronic fund transfers" as defined by the EFTA because they were electronic fund transfers from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit.

92.     Plaintiff and the Class provided timely actual and/or constructive notice to Defendants of the unauthorized electronic transfers from their accounts.

93.     Defendants failed to timely investigate the unauthorized electronic transfers from Plaintiff and the Class's accounts as required by 15 U.S.C. § 1693f(a)(3) and 15 U.S.C. § 1693f(d).

94.     Defendants failed to timely correct the unauthorized transfers from Plaintiff and the Class's accounts by timely crediting their accounts, in violation of 15 U.S.C. § 1693f(b)-(c).

95.     Further, because Coinbase never provided disclosures to Plaintiff and the Class that were compliant with 12 C.F.R. § 1005.7(b), Plaintiff and the Class have no liability for the unauthorized electronic fund transfers under 15 U.S.C. § 1693g and/or 12 C.F.R. § 1005.6.

96.     Coinbase lacked any reasonable basis to believe that the unauthorized transfers from Plaintiff's and the Class's accounts were not in error, but nonetheless wrongfully, knowingly, and

1 | willfully concluded that the unauthorized transfers were not in error in violation of 15 U.S. C. §
2 | 1693f(e).

3 | 97. As a result of Coinbase's failures to comply with the statute, Plaintiff and the Class
4 | were injured as alleged above.

5 | 98. Plaintiff and the Class are therefore entitled to actual, statutory, and treble damages,
6 | costs, and attorneys' fees.

**Second Cause of Action**
**Against All Defendants**
**Violation of the EFTA and Regulation E Customer Service Provisions**
**(15 U.S.C. § 1693f(f)(6); 12 C.F.R. § 1005.11(a)(7))**

10 | 99. Plaintiff repeats and realleges the allegations of the Paragraphs above as if fully set
11 | forth herein.

12 | 100. The EFTA, 15 U.S.C. § 1693f(f)(6) and Regulation E, 12 C.F.R. § 1005.11(a)(7) 4
13 | require financial institutions to address "a consumer's request for additional information or
14 | clarification concerning an electronic fund transfer."

15 | 101. Defendants violated the EFTA and Regulation E by failing to timely provide
16 | information or clarification concerning an electronic fund transfer, including requests Plaintiff and
17 | the Class made to determine whether there were unauthorized electronic transfers from their
18 | accounts. See 15 U.S.C. § 1693f(f)(6); 12 C.F.R. § 1005.11(vii).

19 | 102. Accordingly, Defendants are liable to Plaintiff and the Class for statutory damages,
20 | attorneys' fees, and costs for this claim pursuant to 15 U.S.C § 1693m.

**Third Cause of Action**
**Against All Defendants**
**Violation of the EFTA and Regulation E Disclosure Provisions**
**(15 U.S.C § 1693c, 12 C.F.R. § 1005.7)**

24 | 103. Plaintiff repeats and realleges the allegations of the Paragraphs above as if fully set
25 | forth herein.

26 | 104. 15 U.S.C § 1693c and Regulation E, 12 C.F.R. § 1005.7, require financial
27 | institutions to make the disclosures set forth in § 1005.7(b) before the first electronic fund transfer
28 | is made involving a consumer's account.

105.    Defendants violated Regulation E by failing to provide adequate initial disclosures to Plaintiff and the Class including, as applicable: (1) a summary of Plaintiff's and the Class's liability, under 12 CFR § 1005.6 or under state or other applicable law or agreement, for unauthorized electronic fund transfers; (2) the telephone number and address of the person or office to be notified when Plaintiff or a member of the Class believes that an unauthorized electronic fund transfer has been or may be made; (3) Defendants' business days; (4) the type of electronic fund transfers that Plaintiff and the Class may make and any limitations on the frequency and dollar amount of transfers; (5) any fees imposed by Defendants for electronic fund transfers or for the right to make transfers; (6) a summary of Plaintiff's and the Class's right to receipts and periodic statements, as provided in 12 CFR § 1005.9 of this part, and notices regarding preauthorized transfers as provided in 12 CFR § 1005.10(a) and (d); (7) a summary of Plaintiff and the Class Members' right to stop payment of a preauthorized electronic fund transfer and the procedure for placing a stop payment order, as provided in 12 CFR § 1005.10(c); (8) a summary of Defendants' liability to Plaintiff and Class Members under section 910 of the Act for failure to make or to stop certain transfers; (9) the circumstances under which, in the ordinary course of business, Defendants may provide information concerning Plaintiff's and the Class's account to third parties; (10) a notice that is substantially similar to Model Form A-3 as set out in appendix A of 12 CFR 1005.1, et seq., concerning error resolution; and (11) a notice that a fee may be imposed by an automated teller machine operator as defined in 12 CFR § 1005.16(a), when Plaintiff or a Class Member initiates an electronic fund transfer or makes a balance inquiry, and by any network used to complete the transaction.

106.    As a result of Defendants' violation of the notice requirements of 15 U.S.C. § 1693c and Regulation E, Plaintiff and Class Members are entitled to statutory damages, attorneys' fees, and costs.

**<u>Fourth Cause of Action</u>**
**Against All Defendants**
**Violation of California Uniform Commercial Code Division 8**
**(Cal. Com. Code § 8507(b))**

107.    Plaintiff repeats and realleges the allegations of the Paragraphs above as if fully set forth herein.

108.    In the Coinbase User Agreement, Defendants characterize Coinbase, Inc. as a "securities intermediary" and characterize Coinbase wallets as "financial assets" subject to Division 8 of the California Uniform Commercial Code ("UCC").

109.    Under UCC § 8102(a)(7), the owner of assets held in an account with a securities intermediary is an "entitlement holder."

110.    If Defendants' characterization of the relationship is correct, at the time of the unauthorized transfers alleged herein, Plaintiff and Class were "entitlement holders" with respect to the assets held in Plaintiff's and Class's Coinbase accounts.

111.    Under UCC § 8102(a)(8), an order for a securities intermediary to transfer assets is an "entitlement order."

112.    Under UCC § 8107(b), an entitlement order is only "effective" if it is made by the entitlement holder or an authorized agent or ratified by the entitlement holder.

113.    The orders for the unauthorized transfers from Plaintiff's and Class's Coinbase accounts alleged herein were ineffective because they were not made Plaintiff or by Plaintiff's authorized representatives, nor were they ratified by Plaintiff.

114.    Defendants completed the unauthorized transfers alleged herein despite the fact that they were made pursuant to ineffective entitlement orders.

115.    Pursuant to UCC § 8507(b), Defendants are obligated to credit Plaintiff and Class's accounts to correct the unauthorized transfers and to pay or credit any payments or distributions that Plaintiff and Class did not receive as a result of the wrongful transfers, in addition to liability for damages.

116.    As a direct and foreseeable consequence of Defendants' transfer of Plaintiff's and Class's assets pursuant to invalid entitlement orders and Defendants' failure to credit Plaintiff and Class's accounts to correct the unauthorized transfers, Plaintiff and Class were injured.

**Fifth Cause of Action**
**Against All Defendants**
**Bailment**
**(California Common Law and Civil Code §§ 1813, et seq.)**

117.    Plaintiff repeats and realleges the allegations of the Paragraphs above as if fully set forth herein.

118.    Plaintiff and the Class deposited cryptocurrencies and other funds with Defendants in order to use, store, keep, sell, trade, or exchange cryptocurrencies.

119.    Plaintiff and the Class provided consideration for the cryptocurrencies and funds deposited with Defendants in the form of fees and commissions.

120.    Defendants, as bailees of Plaintiff and the Class's personal property, had an obligation to return or account for the deposited personal property upon demand.

121.    By their own acts or omissions, Defendants caused the personal property deposited by Plaintiff and the Class to be lost.

122.    Defendants have refused to return the personal property deposited by Plaintiff and the Class.

123.    Defendants have refused to provide complete disclosure to Plaintiff and the Class regarding the circumstances under which the loss of property occurred, as a result of which Defendants are "presumed to have willfully, or by gross negligence, permitted the loss or injury to occur" pursuant to Cal. Civ. Code § 1838.

124.    As a result of Defendants' failure to uphold their obligations as bailees, Plaintiff and the Class have been injured because they are deprived of their personal property.

**Sixth Cause of Action**
**Against All Defendants**
**Breach of Contract**

125.    Plaintiff repeats and realleges the allegations of the Paragraphs above as if fully set forth herein.

126.     Plaintiff and the Class deposited cryptocurrencies and other funds with Defendants in order to use, store, keep, sell, trade, or exchange cryptocurrencies pursuant to the Coinbase User Agreement.

127.     Plaintiff and the Class provided consideration for the cryptocurrencies and funds deposited with Defendants in the form of fees and commissions.

128.     In the User Agreement, Defendants agreed to hold Plaintiff's and the Class's assets on behalf of Plaintiff and the Class, to treat the assets as the property of Plaintiff and the Class, to follow Plaintiff and the Class's instructions with respect to disposition of the assets, and to return the assets to Plaintiff and the Class upon demand.

129.     Through the conduct alleged above, Defendants breached the User Agreement, including by causing Plaintiff's and the Class's property to be lost, transferring the property to third parties without Plaintiff's and the Class's consent, failing to follow Plaintiff's and the Class's instructions with respect to the disposition of the property, and failing to return the property to Plaintiff and the Class upon demand.

130.     As a result of Defendants' breach of the User Agreement, Plaintiff and the Class have been injured.

**Seventh Cause of Action**
**Against All Defendants**
**Breach of Implied Covenant of Good Faith and Fair Dealing**

131.     Plaintiff repeats and realleges the allegations of the Paragraphs above as if fully set forth herein.

132.     The Coinbase User Agreement contains an implied covenant of good faith and fair dealing.

133.     Defendants violated the implied covenant of good faith and fair dealing through the conduct alleged above, including by (a) causing Plaintiff's and the Class's property to be lost, (b) transferring the property to third parties without Plaintiff's and the Class's consent, (c) failing to follow Plaintiff's and the Class's instructions with respect to the disposition of the property, (d) failing to return the property to Plaintiff and the Class upon demand, (e) failing to implement proper security procedures to safeguard Plaintiff and the Class's property, (f) failing to respond to

1   requests for information from Plaintiff and the Class, and (g) failing to comply with the EFTA and

2   UCC with respect to Plaintiff's and the Class's accounts.

3        134.    As a result of Defendants' breach of the User Agreement, Plaintiff and the Class

4   have been injured.

**Eighth Cause of Action**
**Against All Defendants**
**Negligence**

7        135.    Plaintiff repeats and realleges the allegations of the Paragraphs above as if fully set

8   forth herein.

9        136.    Defendants owed a duty of reasonable care toward Plaintiff and the Class based

10   upon Defendants' relationship to them.

11        137.    Defendants breached this duty by negligently, carelessly, and recklessly collecting,

12   maintaining, and controlling its customers' funds, cryptocurrency, and failing to protect them from

13   exposure to unauthorized third parties.

14        138.    As a direct and foreseeable consequence of Defendants' breaches of their duty of

15   care, Plaintiff and the Class were injured.

**Ninth Cause of Action**
**Against All Defendants**
**Violation of Consumer Legal Remedies Act ("CLRA")**
**(Cal. Civ. Code §§ 1750, *et seq*.)**

19        139.    Plaintiff repeats and realleges the allegations of the Paragraphs above as if fully set

20   forth herein.

21        140.    At all relevant times, Plaintiff and the Class were "consumers" as under the terms of

22   the CLRA as individuals seeking or acquiring, by purchase or lease, goods or services for personal,

23   family, or household purposes.

24        141.    Defendants' actions and conduct constituted transactions for the sale or lease of

25   goods or services to consumers under the terms of the CLRA.  The assets involved in the

26   unauthorized transactions are "goods" and Defendants' financial and online platform services are

27   "services" under the CLRA.

28

142.     As detailed above, Defendants violated the CLRA by, among other things, making false statements about their services and including unconscionable and/or unlawful provisions in their contracts.

143.     Defendants' misrepresentations were material.  Defendants' violations of the CLRA were a substantial factor in causing Plaintiff and the Class to use Defendants' services.

144.     As a direct and proximate consequence of the actions as identified above, Plaintiff and the Class suffered injury.

145.     Defendants' conduct described herein was malicious, fraudulent, and wanton in that Defendants intentionally and knowingly provided misleading information to Plaintiff and the Class and refused to remedy the breach of its system long after learning of the inadequacy of its data protection measures and the unauthorized use of customers' accounts.

**Tenth Cause of Action**
**Against All Defendants**
**Unfair Competition Law ("UCL")**
**(Violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

146.     Plaintiff repeats and realleges the allegations of the Paragraphs above as if fully set forth herein.

147.     Plaintiff and Defendants are "persons" within the meaning of the UCL. Bus. & Prof. Code § 17201.

148.     As alleged above, Defendants have engaged in unlawful, fraudulent and/or unfair conduct that are harmful and deceiving to consumers within the meaning of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL").

149.     Plaintiff suffered an injury in fact and lost money or property as a result of Defendants' violations of the UCL.

150.     Defendants' conduct is substantially injurious to consumers, offends legislatively-declared public policy as announced by the violations of the laws alleged, and is immoral, unethical, oppressive, and unscrupulous.  The gravity of Defendants' wrongful conduct outweighs any alleged benefits attributable to such conduct.  There were reasonably available alternatives to

1  further Defendants' legitimate business interests other than engaging in the above-described

2  wrongful conduct.

3  **Eleventh Cause of Action**
**Against All Defendants**
4  **Unjust Enrichment**

5  151.   Plaintiff repeats and realleges the allegations of the Paragraphs above as if fully set

6  forth herein.

7  152.   Plaintiff and the Class conferred a benefit upon Defendants by depositing funds and

8  cryptocurrencies into their Coinbase accounts, and paid Defendants fees and commissions for the

9  maintenance of those funds and cryptocurrencies and for the transactions conducted on the

10  Coinbase platform.

11  153.   As a result of Defendants' actions and omissions alleged herein, Defendants have

12  been unjustly enriched at the expense of Plaintiff and the Class.  Under principles of equity,

13  Defendants should not be permitted to retain the commissions and transaction fees paid by Plaintiff

14  and the Class or the assets held within Plaintiff's and the Class's accounts.

15  154.   Plaintiff and the Class have no adequate remedy at law.

16  **PRAYER FOR RELIEF**

17  WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays

18  that this Court enter judgment against Defendants and in favor of Plaintiff and the Class,

19  and issue the following relief:

20  a.    Injunctive relief;

21  b.    Declaratory relief;

22  c.    Compensatory damages;

23  d.    Statutory damages;

24  e.    Treble damages;

25  f.    Restitution;

26  g.    Disgorgement;

27  h.    Punitive damages;

28  i.    Attorneys' fees and costs; and

1                 j.       All such further relief as the Court deems just and proper.

2

3 Dated:  August 23, 2022                       Respectfully submitted,

4                                           BRAUNHAGEY & BORDEN LLP

5

6                               By:    */s/ J. Noah Hagey*
                                            J. Noah Hagey

7                             *Attorneys for Class Plaintiff Manish Aggarwal*
8                             *and Others Similarly Situated*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>JURY DEMAND</u>

Plaintiff, on behalf of himself and the Class, hereby demands a trial by jury on all causes of action and claims so triable.

Dated:  August 23, 2022

BRAUNHAGEY & BORDEN LLP

By:    /s/ *J. Noah Hagey*
       J. Noah Hagey

*Attorneys for Class Plaintiff Manish Aggarwal and Others Similarly Situated*