J. Noah Hagey, Esq. (SBN: 262331)
 hagey@braunhagey.com
Matthew Borden, Esq. (SBN: 214323)
 borden@braunhagey.com
Ronald J. Fisher, Esq. (SBN: 298660)
 fisher@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
 rowe@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

Jonathan Kortmansky, Esq. (*pro hac vice*)
 kortmansky@braunhagey.com
Molly M. Jamison, Esq. (*pro hac vice* forthcoming)
 jamison@braunhagey.com
BRAUNHAGEY & BORDEN LLP
118 W 22nd Street, 12th Floor
New York, NY 10011
Telephone:  (646) 829-9403
Facsimile:  (646) 403-4089

*Attorneys for Class Plaintiffs Manish Aggarwal, Mostafa El Bermawy,
and Others Similarly Situated*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| MANISH AGGARWAL and MOSTAFA EL BERMAWY, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>COINBASE, INC. and COINBASE GLOBAL, INC.,<br><br>    Defendants. | Case No. 4:22-cv-04829-JSW<br><br>**PLAINTIFFS MANISH AGGARWAL AND MOSTAFA EL BERMAWY'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION** |

1

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

      A.     The Dispute ................................................................................................ 2

      B.     The Coinbase User Agreement ................................................................. 2

ARGUMENT ...................................................................................................................... 3

I.      PLAINTIFFS HAVE SEPARATED THEIR NON-ARBITRABLE AND NON-JUSTICIABLE REQUESTS FOR PUBLIC INJUNCTIVE RELIEF .............................. 4

II.     THE ARBITRATION CLAUSE IS ILLUSORY ................................................. 4

III.    THE ARBITRATION CLAUSE IS UNCONSCIONABLE ............................................. 6

      A.     The Arbitration Clause Is Procedurally Unconscionable ........................ 6

      B.     The Arbitration Clause is Substantively Unconscionable ...................... 7

               1.     The Arbitrator Lacks Authority to Award Damages Against Coinbase ..... 7

               2.     The Arbitration Clause Imposes One-Sided Preconditions to Arbitration ................................................................................... 9

               3.     The Arbitration Clause Exempts Claims by Coinbase ........................... 10

               4.     The Arbitration Clause Imposes One-Sided Fee-Shifting Rules .............. 11

               5.     The Arbitration Clause Permits Unilateral Amendments by Coinbase .... 12

               6.     The Arbitration Clause Unlawfully Prohibits Public Injunctive Relief.... 12

      C.     The Unconscionable Terms of the Arbitration Clause Cannot be Severed ......... 12

IV.    THE DELEGATION CLAUSE DOES NOT APPLY ...................................... 13

      A.     The Delegation Clause Does Not Cover Plaintiffs' Challenges to Arbitrability .............................................................................. 14

      B.     Plaintiffs' Formation Challenges Are Not Arbitrable ......................... 15

      C.     The Delegation Clause is Unconscionable ......................................... 15

CONCLUSION................................................................................................................. 16

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Ajamian v. CantorCO2e, L.P.*,
   203 Cal. App. 4th 771 (2012) ................................................................................................ 18

4

*Alfia v. Coinbase*,

5

   No. 21-cv-08689-HSG, 2022 WL 3205036 (N.D. Cal. July 22, 2022) ...................................... 4

*Armendariz v. Found. Health Psychcare Servs., Inc.*,

6

   24 Cal. 4th 83 (2000) ............................................................................................. 11, 13, 15, 16

*Bielski v. Coinbase*,

7

   No. C 21-7478 WHA, 2022 WL 1062049 (N.D. Cal. Apr. 8, 2022) 1, 2, 3, 7, 8, 11, 12, 15, 16, 18

8

*Blair v. Rent-A-Ctr., Inc.*,
   928 F.3d 819, 825 (9th Cir. 2019) ........................................................................................... 4

9

*Carmona v. Lincoln Millennium Car Wash, Inc.*,
   226 Cal. App. 4th 74 (2014) ................................................................................................... 12

10

*Douglas v. Johnson Real Estate Investors, LLC*,
   470 Fed. Appx. 823 (11th Cir. 2012) ....................................................................................... 6

11

*Dumais v. Am. Golf Corp.*,
   299 F.3d 1216 (10th Cir. 2002) ............................................................................................... 6

12

*Fisher v. MoneyGram Int'l, Inc.*,

13

   66 Cal. App. 5th 1084 (2021) ................................................................................................... 8

*Fitz v. NCR Corp.*,

14

   118 Cal. App. 4th 702 (2004) ................................................................................................. 13

*Floss v. Ryan's Family Steak Houses, Inc.*,

15

   211 F.3d 306 (6th Cir. 2000) ................................................................................................... 6

*Gelow v. Cent. Pac. Mortg. Corp.*,

16

   560 F. Supp. 2d 97 (E.D. Cal. 2008) ...................................................................................... 11

*Goldman, Sachs & Co. v. City of Reno*,

17

   747 F.3d 733 (9th Cir. 2014) ................................................................................. 4, 10, 16, 17

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,

18

   130 S. Ct. 2847 (2010) ............................................................................................................. 4

19

*Hartley v. Superior Ct.*,
   196 Cal. App. 4th 1249 (2011) ............................................................................................... 17

20

*Hodges v. Comcast Cable Communications*,

21

   LLC, 21 F.4th 535 (9th Cir. 2021) ........................................................................................... 4

*Hooters of Am., Inc. v. Phillips*,

22

   173 F.3d 933 (4th Cir.1999) ..................................................................................................... 6

*In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*,

23

   893 F. Supp. 2d 1058 (D. Nev. 2012) ...................................................................................... 5

*Indep. Assn. of Mailbox Ctr. Owners, Inc. v. Superior Ct.*,

24

   133 Cal. App. 4th 396 (2005) ................................................................................................. 11

25

*Ingle v. Cir. City Stores, Inc.*,
   328 F.3d 1165 (9th Cir. 2003) .......................................................................................... 11, 14

26

*Little v. Auto Stiegler, Inc.*,
   29 Cal. 4th 1064 (2003) ........................................................................................................... 9

27

*MacClelland v. Cellco P'ship*,

28

   21-cv-08592-EMC, 2022 WL 2390997 (N.D. Cal. Jul. 1, 2022) ................................. 7, 15, 16

*McGill v. Citibank, N.A.*,
  2 Cal. 5th 945 (2017) .................................................................................................. 14

*Mercuro v. Superior Ct.*,
  96 Cal. App. 4th 167 (2002) ...................................................................................... 14

*Morrison v. Amway Corp.*,
  517 F.3d 248 (5th Cir. 2008) ...................................................................................... 6

*Moua v. Optum Servs., Inc.*,
  320 F. Supp. 3d 1109 (C.D. Cal. 2018) ...................................................................... 5

*Nelson v. Dual Diagnosis Treatment Ctr., Inc.*,
  77 Cal. App. 5th 643 (2022) ........................................................................................ 8

*Norcia v. Samsung Telecomm's Am., LLC*,
  845 F.3d 1279 (9th Cir. 2017) .................................................................................... 4

*Nyulassy v. Lockheed Martin Corp.*,
  120 Cal. App. 4th 1267 (2004) .................................................................................. 12

*Parada v. Superior Court*,
  176 Cal. App. 4th 1554 (2009) .................................................................................. 10

*Peleg v. Neiman Marcus Grp., Inc.*,
  204 Cal. App. 4th 1425 (2012) .................................................................................... 7

*Penn v. Ryan's Family Steak Houses, Inc.*,
  269 F.3d 753 (7th Cir. 2001) ...................................................................................... 6

*Pinela v. Neiman Marcus Grp., Inc.*,
  238 Cal. App. 4th 227 (2015) ............................................................................ 7, 8, 18

*Pokorny v. Quixtar, Inc.*,
  601 F.3d 987 (9th Cir. 2010) ...................................................................................... 12

*Rogers v. Lyft, Inc.*,
  452 F. Supp. 3d 904 (N.D. Cal. 2020) ........................................................................ 5

*Samaniego v. Empire Today LLC*,
  205 Cal. App. 4th 1138 (2012) .................................................................................. 14

*Sifuentes v. Dropbox, Inc.*,
  No. 20-CV-07908-HSG, 2022 WL 2673080 (N.D. Cal. June 29, 2022) ...................... 6

*Suski v. Coinbase, Inc.*,
  55 F.4th 1227 (9th Cir. 2022) .................................................................................... 18

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ................................................................................................ 5

*Vilner v. Crocker Nat'l Bank*,
  89 Cal. App. 3d 732 (1979) ........................................................................................ 9

**Statutes**

9 U.S.C. § 2 .................................................................................................................... 3

Cal. Civ. Code § 1670.5(a) ...................................................................................... 6, 12

Plaintiffs Manish Aggarwal and Mostafa El Bermawy respectfully submit this memorandum in opposition to Coinbase's motion to compel arbitration.

**<u>INTRODUCTION</u>**

Plaintiffs Manish Aggarwal and Mostafa El Bermawy lost hundreds of thousands of dollars because Coinbase failed to take basic steps to secure their accounts against hackers. When Coinbase refused to make them whole, they filed this class action to redress Coinbase's statutory violations and fraudulent promises that it provided bank-level security and 24-hour support.

Coinbase seeks to avoid accountability to Plaintiffs and many other fraud victims by trying to enforce an arbitration clause buried in a backdated amendment to a 22,000-word User Agreement. Coinbase forced customers to accept these terms by threatening to lock them out of their accounts – without visibility or control of their assets – if they did not agree. Coinbase made the amendments after it became clear that the Honorable William Alsup was going to find that Coinbase's arbitration clause was unconscionable in *Bielski v. Coinbase,* No. C 21-7478 WHA, 2022 WL 1062049 (N.D. Cal. Apr. 8, 2022). But rather than cure the unconscionable provisions at issue in *Bielski*, Coinbase made the problem worse by retaining the same unconscionable terms and adding new one-sided provisions that frustrate consumers' ability to obtain relief in arbitration, all while leaving Coinbase free to pursue its favored claims and issues in court.

Coinbase's motion to compel arbitration should be denied for multiple reasons. First, the arbitration clause is illusory because it permits Coinbase to unilaterally amend its terms at will, including by backdating provisions to apply to previously-accrued claims. Second, the arbitration clause is unconscionable because it is stacked with one-sided provisions designed to prevent customers from obtaining effective relief – including provisions stripping the arbitrator of authority to award damages against Coinbase, one-sided preconditions to arbitration, carve-outs from arbitration for claims and issues favored by Coinbase, and one-sided fee-shifting in favor of Coinbase, among others. The challenges that Plaintiffs raise to the Arbitration Clause concern issues that are entrusted to the sole jurisdiction of the Court under the terms of the Agreement. Because Coinbase fails to carry its burden of establishing that there is an enforceable agreement to arbitrate Plaintiffs' claims, its motion should be denied.

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION

# BACKGROUND

### A.     The Dispute

Manish Aggarwal and Mostafa El Bermawy are Coinbase customers who opened their accounts in 2021 and 2017, respectively. (FAC ¶¶ 1-11.) They relied on Coinbase's promises that it would safeguard their assets using security on par with a bank. (*Id*. ¶¶ 43-45.) Coinbase, however, does not provide bank-level security and fails to take adequate steps to secure customer accounts.[1] Coinbase's security failures permitted hackers to break into Aggarwal's account in April 2022 and steal approximately $190,000 in cryptocurrency. (FAC ¶¶ 58-80.) In July 2022, hackers similarly broke into El Bermawy's account and stole approximately $70,000 in cryptocurrency. (*Id*.)

### B.     The Coinbase User Agreement

Coinbase requires that users consent to its User Agreement to use its platform. The versions of the User Agreement in effect when Plaintiffs opened their accounts contained arbitration provisions that Judge Alsup recently determined were unenforceable. In *Bielski*, the Court found that the arbitration agreement lacked a "modicum of bilaterality" because it required users to complete an onerous multi-tiered dispute resolution process prior to bringing claims in arbitration while imposing no similar burden on Coinbase. 2022 WL 1062049, at *2-6. The Court concluded that the agreement was unenforceable under California law because it was "permeated by unconscionability" and "simply too tainted to be saved through minor adjustments." *Id*. at *7.

In January 2022, Coinbase unilaterally amended its User Agreement. It buried a new arbitration clause (the "Arbitration Clause") in the last of five "appendices" to the User Agreement, at the end of an over 22,000-word document. (Declaration of Matthew Borden, Ex. A.) For customers like Plaintiffs who had existing Coinbase accounts, Coinbase obtained "consent" to the new agreement by locking customers out of their accounts unless they clicked "accept." (*Id*. Ex. B.)

The "clickwrap" screen employed by Coinbase did not clearly convey the changes to the Arbitration Clause. When viewing the amended User Agreement on a mobile device, as Coinbase asserts Plaintiffs did, the user must scroll through more than 150 pages of text to reach the start of

---

[1] Two days before this filing, Coinbase entered into a $100 million settlement and Consent Order with the State of New York regarding its failures to detect and prevent illegal activity on its platform. *See* https://www.dfs.ny.gov/system/files/documents/2023/01/ea20230104_coinbase.pdf

1    the Arbitration Clause.[2] In addition, the clause was not a stand-alone provision. Instead, it

2    incorporated other dispute resolution processes buried in other random sections of the 150+ page

3    agreement, including the "informal" dispute resolution process and the "Formal Complaint

4    Process" found unconscionable in *Bielski*, the "Limitations on Liability' section, and other

5    provisions. To fully understand the Arbitration Clause, a user needs to cross-reference each of these

6    terms, located approximately 100 pages earlier in the middle of the document.

7         Pieced together, the Arbitration Clause provides that only certain disputes between

8    Coinbase's customers and Coinbase are subject to arbitration. Disputes that are exempt from

9    arbitration include "small claims" actions (Arbitration Clause § 1.1), claims for "equitable relief

10   […] for infringement or other misuse of intellectual property rights," (*Id.*), all disputes "arising out

11   of or relating to" the Agreement's purported waiver of class actions and public relief (*Id.* § 1.6(1)),

12   disputes regarding arbitration fees (*Id.* § 1.6(2)), "all Disputes about whether either party has

13   satisfied any condition precedent to arbitration" (*Id.* § 1.6(3)), and "all Disputes about which

14   version of the Arbitration Agreement applies." (*Id.* § 1.6(4)).

15        As detailed in Section III below, the Arbitration Clause contains one-sided provisions

16   favoring Coinbase – including a waiver of damages against Coinbase, a one-sided pre-litigation

17   complaint process, selective carve-outs for claims likely to be brought by Coinbase, and others.

18                                          **ARGUMENT**

19        The party seeking to compel arbitration "bears 'the burden of proving the existence of an

20   agreement to arbitrate'" the dispute at issue. *Norcia v. Samsung Telecomm's Am., LLC*, 845 F.3d

21   1279, 1283 (9th Cir. 2017) (citation omitted). Courts may refuse to compel arbitration based on any

22   generally applicable rule of state law. 9 U.S.C. § 2; *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819 (9th

23   Cir. 2019). When no valid agreement to arbitrate was formed, a motion to compel must be denied

24   because "[a]rbitration is strictly a matter of consent and thus is a way to resolve those disputes—

25

26   [2] Coinbase's Motion contains a screenshot of how Coinbase's amendment appeared when viewed
     on a mobile device. (Mot. at 4.) Only 115 words of the agreement fit on a single screen (including
27   words partly cut off by the "Accept Terms" button). (*Id.*) Because the User Agreement contains
     approximately 22,466 words, the Arbitration Clause, located in "Appendix 5," would have begun at
28   approximately page 175 out a total 195 pages of text.

1  but only those disputes—that the parties have agreed to submit to arbitration." *Goldman, Sachs &*

2  *Co. v. City of Reno*, 747 F.3d 733, 741-42 (9th Cir. 2014) (quoting *Granite Rock Co. v. Int'l Bhd. of*

3  *Teamsters*, 561 U.S. 287, 299 (2010)).[3]

4  **I.     PLAINTIFFS HAVE SEPARATED THEIR NON-ARBITRABLE AND NON-
         JUSTICIABLE REQUESTS FOR PUBLIC INJUNCTIVE RELIEF**

5         In *Hodges v. Comcast Cable Communications*, LLC, 21 F.4th 535 (9th Cir. 2021), the Ninth

6  Circuit affirmed that claims for public injunctive relief under California law are not arbitrable. *Id.*

7  at 539-40. Because the plaintiffs for such claims seek to assert injuries and threatened harms on

8  behalf of the entire public, federal courts, consistent with *TransUnion LLC v. Ramirez*, 141 S. Ct.

9  2190 (2021), have held that plaintiffs lack standing and remand the claims to state court. *See, e.g.,*

10  *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 918 (N.D. Cal. 2020) (remanding request for public

11  injunctive relief to state court). To address this issue, Plaintiffs are not seeking public injunctive

12  relief in this Court and instead have filed an action for such relief in San Francisco Superior Court,

13  in the case styled *Manish Aggarwal, et al., v. Coinbase, Inc., et al.*

14  **II.    THE ARBITRATION CLAUSE IS ILLUSORY**

15         Coinbase's motion to compel arbitration fails because Coinbase cannot establish the

16  formation of a valid contract to arbitrate Plaintiffs' claims. Under California law, "[a] contract is

17  unenforceable as illusory when one of the parties has the unfettered or arbitrary right to modify or

18  terminate the agreement or assumes no obligations thereunder." *Moua v. Optum Servs., Inc.*, 320 F.

19  Supp. 3d 1109, 1113-14 (C.D. Cal. 2018) (quoting *Harris v. Tap Worldwide, LLC*, 248 Cal. App.

20  4th 373, 385 (2016)). The Arbitration Clause permits Coinbase to unilaterally amend its terms at

21  any time, granting Coinbase unlimited power to amend the Arbitration Clause in its sole discretion.

22  (Arbitration Clause § 1.9.) While the agreement references "notice," it eliminates any meaningful

23  notice requirement by allowing Coinbase to simply post new terms on its website—*i.e.* to use

24  "browsewrap" – after which users will be deemed to have accepted them. (*Id.*)

25  _____

26  [3] Coinbase's reliance on *Alfia v. Coinbase*, 2022 WL 3205036 (N.D. Cal. July 22, 2022) (Mot. at 9)
    is misplaced. *Alfia* addressed Coinbase's "2017 User Agreement," not the 2022 User Agreement

27  that Coinbase contends applies here. *Alfia* is also distinguishable because the court did not consider
    the unconscionable provisions identified by Plaintiffs in this Opposition, did not consider whether

28  the arbitration clause was illusory, and did not reach the validity of Coinbase's amendments.

1   Courts have repeatedly held that that unilateral amendment provisions render an arbitration

2   agreement unenforceable. *See Moua*, 320 F. Supp. 3d at 1113-14; *In re Zappos.com, Inc., Customer*

3   *Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058, 1065-66 (D. Nev. 2012) ("Most federal courts that

4   have considered this issue have held that if a party retains the unilateral, unrestricted right to

5   terminate the arbitration agreement, without effective notice, it is illusory and unenforceable").[4]

6   Where an agreement allows for unilateral amendments without notice to consumers—such as the

7   browsewrap provision in the Arbitration Provision—these amendments are further unenforceable

8   because they do not establish mutual assent. *Sifuentes v. Dropbox, Inc.*, No. 20-CV-07908-HSG,

9   2022 WL 2673080, at *4 (N.D. Cal. June 29, 2022) (denying motion to compel where defendant

10  added arbitration term to user agreement via "browsewrap" amendment).

11  While California law allows unilateral amendment provisions in an arbitration agreement if

12  they are silent as to previously-accrued claims, this cannot "save" Coinbase's Arbitration Clause

13  because the January 2022 amendments to the Arbitration Clause are not silent on accrued claims.

14  Instead, the amendments expressly apply to "claims and disputes that arose between us before the

15  effective date of these Terms" and "disputes that arose or involve facts occurring before the

16  existence of this or any prior versions of the User Agreement[.]" (Arbitration Clause § 1.1.) *See*

17  *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1465 (2012) ("An arbitration

18  agreement that expressly exempts all claims, accrued or known, from contract changes is valid and

19  enforceable without resort to the covenant [of good faith and fair dealing]. If, on the other hand, an

---

20  [4] *See, also, Douglas v. Johnson Real Estate Investors, LLC*, 470 Fed. Appx. 823, 825 (11th Cir.

21  2012) ("Because the employee handbook allowed Johnson to unilaterally modify the arbitration procedures without notifying Douglas, the agreement to arbitrate was illusory and invalid.");

22  *Morrison v. Amway Corp.*, 517 F.3d 248, 257-58 (5th Cir. 2008) (finding arbitration agreement "illusory and unenforceable" where one party could "unilaterally repeal or amend the arbitration

23  provisions"); *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) ("We join other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the

24  arbitration agreement's existence or its scope is illusory."); *Penn v. Ryan's Family Steak Houses,*

25  *Inc.*, 269 F.3d 753, 759-60 (7th Cir. 2001) (arbitration agreement was "unenforceable and illusory" where one party had "sole, unilateral discretion to modify or amend"); *Floss v. Ryan's Family Steak*

26  *Houses, Inc.*, 211 F.3d 306, 315-16 (6th Cir. 2000) (arbitration clause was "fatally indefinite" and illusory because employer "reserved the right to alter applicable rules and procedures without any

27  obligation to notify, much less receive consent from," employees); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir.1999) (refusing to enforce arbitration agreement that permitted drafting

28  party to modify rules "in whole or in part" without notice).

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION

arbitration agreement expressly applies a contract change to such claims, the covenant cannot vary the plain language, and the agreement is illusory.").

## III.   THE ARBITRATION CLAUSE IS UNCONSCIONABLE

"Under California law, a contract provision is unenforceable if it was 'unconscionable at the time it was made.'" *Bielski*, 2022 WL 1062049, at *2 (quoting Cal. Civ. Code § 1670.5(a)). "Unconscionability has both procedural and substantive elements. These elements are analyzed on a sliding scale: the more substantively unfair, the less procedurally unconscionable a provision need be for a finding it is unenforceable, and vice-versa." *Id.*; *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 242 (2015). Procedural unconscionability "focus[es] on oppression or surprise due to unequal bargaining power," while substantive unconscionability focuses on "overly harsh or one-sided results." *Pinela*, 238 Cal. App. 4th at 242. The Arbitration Clause fails for the separate and independent reason that it is both procedurally and substantively unconscionable.

### A.   The Arbitration Clause Is Procedurally Unconscionable

The Arbitration Clause is procedurally unconscionable. First, Coinbase presented it on a "take-it-or-leave-it" basis without an opportunity to negotiate, making it a contract of adhesion. (Aggarwal Decl. ¶¶ 6-7; El Bermawy Decl. ¶¶ 6-7.) An "arbitration agreement is at least minimally procedurally unconscionable if it is a contract of adhesion." *MacClelland v. Cellco P'ship*, 2022 WL 2390997, at *5 (N.D. Cal. Jul. 1, 2022).

Second, the Arbitration Clause is oppressive. "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Pinela*, 238 Cal. App. 4th at 243. Coinbase's process for obtaining consent to the amended User Agreement forced existing customers to immediately accept the amended terms or else be locked out of their accounts. (Borden Decl. Ex. B at 2 ("If you don't accept the new agreement, then you won't be able to access your Coinbase account").) Although Coinbase's communications suggested that there was some undefined process for withdrawing assets from the platform if customers did not assent, the process prevented users from "shopping around" or meaningfully withholding consent before accepting the terms of the agreement. Courts find unconscionability "in such dire situations [where] the plaintiff cannot be expected to 'shop around' for an alternative bargain."

1   *Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1095 (2021).

2          Third, the Arbitration Clause is unfairly surprising. "'Surprise' involves the extent to which

3   the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by

4   the party seeking to enforce the disputed terms." *Pinela*, 238 Cal. App. 4th at 243. In *Bielski*, the

5   Court found Coinbase's arbitration clause is unfairly surprising because it imposes unexpected

6   "onerous procedural preconditions" on a customer's right to seek relief for violations of statutory

7   federal rights. 2022 WL 1062049, at *6 ("such a broad prohibition on access to formal resolution

8   procedures would surprise the average consumer for this type of service"). The Arbitration Clause

9   is further unfairly surprising because it is hidden in "Appendix 5" of a 22,000-word agreement,

10  along with the requirement that users cross-reference other sections earlier in the User Agreement

11  to ascertain its meaning, while reviewing these terms on the small screen of a mobile device.

12  Where a party manipulates the presentation of terms to obscure their significance in this manner, it

13  supports a finding of procedural unconscionability. *Nelson v. Dual Diagnosis Treatment Ctr., Inc.*,

14  77 Cal. App. 5th 643, 661 (2022) ("The manipulative aspect of presenting important terms in a

15  written contract and contrary terms elsewhere in an inaccessible manner is akin to furnishing a

16  translation of only portions of a proposed agreement").

17         **B.     The Arbitration Clause is Substantively Unconscionable**

18         The Arbitration Clause is also replete with one-sided provisions that render the clause

19  substantively unconscionable. An arbitration clause that contains "unfairly one-sided" terms is

20  substantively unconscionable. *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (2003).

21                 **1.     The Arbitrator Lacks Authority to Award Damages Against Coinbase**

22         The first one-sided provision is that the Arbitration Clause limits the arbitrator's power to

23  award damages against Coinbase. Section 1.6, entitled "Authority of Arbitrator," provides that "[i]n

24  any award of damages, the arbitrator shall abide by the 'Limitation of Liability' section of the User

25  Agreement." (Arbitration Clause § 1.6.) The "Limitation of Liability" section, in turn, provides that

26  Coinbase, but not the customer, has no liability for any damages "except to the extent of a final

27  judicial determination that such damages were a result of Coinbase's gross negligence, fraud,

28  willful misconduct, or intentional violation of law." (User Agreement § 8.2.) This one-sided

1  limitation of liability is facially unlawful because a financial institution entrusted with a customer's

2  property may not exculpate itself from liability for negligence. *Vilner v. Crocker Nat'l Ban*k, 89

3  Cal. App. 3d 732, 737 (1979) (where customer alleged that bank negligently lost customer's

4  deposit, clause exculpating bank for negligence was unenforceable under public policy prohibiting

5  exculpation for negligence in bailment and banking relationships).

6        It is also one-sided because whereas Coinbase has limited its liability to gross negligence,

7  the user can be liable for simple negligence and be required to "indemnify and hold Coinbase […]

8  harmless from any claim or demand (including attorneys' fees and any fines, fees or penalties

9  imposed by any regulatory authority) arising out of or related to your breach of this Agreement or

10 your violation of any law, rule or regulation, or the rights of any third party." (User Agreement §

11 8.1.) Thus, in any arbitration, Coinbase customers are exposed to liability for all manner of

12 damages and claims while Coinbase is insulated from damages for its own negligence.

13        Further, the literal terms of the Arbitration Clause preclude the arbitrator from awarding any

14 damages at all against Coinbase, even with respect to intentional misconduct. Under Section 8.2,

15 the arbitrator may not award damages against Coinbase "except to the extent of a *final judicial*

16 *determination* that such damages were a result of Coinbase's gross negligence, fraud, willful

17 misconduct, or intentional violation of law" (emphasis added). But Coinbase argues that the

18 Arbitration Clause requires an arbitrator – not a judicial body – to hear customers' claims for

19 damages. (Mot. at 8-9.) Because the Arbitration Clause limits the arbitrator's authority to award

20 damages by requiring the arbitrator to follow Section 8.2 in awarding relief (Arbitration Clause §

21 1.6), this makes it impossible for a customer to obtain a "judicial determination" of Coinbase's

22 fault that would allow the arbitrator to award damages. [5] Under the User Agreement, the arbitrator

---

23

24 [5] That the User Agreement provides for a "judicial determination" of damages also means that
   claims for damages are exempt from arbitration entirely. Consumers—and arbitrators—would

25 understand the term "judicial determination" to refer to determinations by a court. *Goldman, Sachs*,
   747 F.3d at 738 ("issue[s] for judicial determination" are decided by court). Where a contract

26 contains language indicating that a court may hear certain claims or issues, they are for the court to
   decide even if the agreement otherwise requires arbitration. *Id*. at 746 (defendant "disclaimed any

27 right it might otherwise have had to the… arbitration forum" by including "reference to a judicial

28 forum" in other provision of agreement); *Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1566

1   cannot award damages before a judicial determination (User Agreement § 8.2), but users

2   purportedly cannot bring claims for damages in court because "[t]he arbitrator shall have exclusive

3   authority to resolve any Dispute." (Arbitration Clause § 1.6.) As a result, Coinbase is effectively

4   immune from damages.

5        "In order for an arbitration agreement to be lawful, it must allow for all types of relief that a

6   court could order." *Gelow v. Cent. Pac. Mortg. Corp.*, 560 F. Supp. 2d 972, 981 (E.D. Cal. 2008).

7   Provisions such as Arbitration Clause Section 1.6 and User Agreement Section 8.2 that preclude

8   relief that would be available in court violate this rule and are routinely deemed unconscionable.

9   *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83,  121 (2000) ("The

10   unconscionable one-sidedness of the arbitration agreement is compounded [because] . . . it does not

11   permit the full recovery of damages for [the non-drafting party], while placing no such restriction

12   on the [drafting party]"); *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1179 n.20 (9th Cir. 2003)

13   (arbitration agreement that "place[d] limits on an employee's total damages" was unconscionable);

14   *Indep. Assn. of Mailbox Ctr. Owners, Inc. v. Superior Ct.*, 133 Cal. App. 4th 396, 412–13 (2005)

15   ("To the extent that the arbitration clauses […] seek to deprive plaintiffs of statutorily authorized

16   remedies, or relief in court that would otherwise be allowable to them, they are unconscionable").

17        **2.**      **The Arbitration Clause Imposes One-Sided Preconditions to Arbitration**

18        The Arbitration Clause is separately one-sided because it leaves intact the one-way dispute

19   resolution process that the Court determined to be unconscionable in *Bielski*. The Arbitration

20   Clause makes the right to pursue arbitration (or any dispute) contingent on a pre-litigation

21   resolution procedure described in Section 7 of the User Agreement. In the event of a dispute, a

22   customer – but not Coinbase – must "first […] attempt to resolve any such dispute amicably."

23   (User Agreement § 7.) If this "amicable" resolution attempt fails, the User Agreement than requires

24   the customer to pursue a "Formal Complaint Process," (*Id*. § 7.2.1.) Meanwhile, Coinbase has no

25   obligation under the Agreement to respond to any informal requests and no obligation to respond to

26   the formal complaint beyond acknowledging receipt. (*Id.*) Instead, Coinbase may simply wait 45

27

28   (2009) (where agreement indicated enforceability challenges could be decided by "trier of fact of
competent jurisdiction" rather than "arbitration panel," these issues were for court to decide).

business days – two calendar months – without responding, at which point the Formal Complaint process is deemed "completed" regardless of whether any resolution was offered. (*Id.*) The sanction for failing to follow this multi-tiered pre-litigation process is the dismissal of any arbitration that the customer may file. (*Id.* § 7.2.) Coinbase, however, remains free to file an arbitration or lawsuit immediately without any pre-suit procedures or notice to the customer.

Judge Alsup held that this same informal resolution procedure was unenforceable because it lacked a "modicum of bilaterality." *Bielski*, 2022 WL 1062049, at *2-6. Courts have found similar mandatory informal resolution processes that allow the stronger party a "free peek" at the weaker party's case while imposing no comparable obligations on the stronger party are unconscionable. *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1282 (2004) (provision requiring employee to engage in informal discussions "as a condition precedent to[] having his dispute resolved through binding arbitration" was unconscionable); *Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal. App. 4th 74, 89 (2014) (one-sided informal resolution procedure was unconscionable because employer had "no corresponding obligation under the agreement to discuss its disputes with employees before taking action in court or through arbitration"); *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 999 (9th Cir. 2010) (agreement requiring employee to "engage in non-binding conciliation" was unconscionable because it was "not mutual").

### 3.   The Arbitration Clause Exempts Claims by Coinbase

The Arbitration Clause is separately unconscionable because it exempts claims Coinbase is likely to bring from arbitration while requiring customers to arbitrate their claims. "An agreement may be unfairly one-sided if it compels arbitration of the claims more likely to be brought by the weaker party but exempts from arbitration the types of claims that are more likely to be brought by the stronger party." *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 724 (2004). The Arbitration Clause is riddled with exceptions that allow Coinbase to bring its own claims in court, while requiring arbitration of claims likely to be brought by customers:

First, the Arbitration Clause provides that "you or Coinbase may seek equitable relief in court for infringement or other misuse of intellectual property rights (such as trademarks, trade dress, domain names, trade  secrets, copyrights, and patents." (Arbitration Clause § 1.1.) But using

1    the Coinbase platform does not implicate customers' intellectual property rights, so there is no

2    scenario in which a customer would sue Coinbase for infringement in their capacity as a customer.

3        Second, the Arbitration Clause provides that "all Disputes about whether either party has

4    satisfied any condition precedent to arbitration shall be decided only by a court of competent

5    jurisdiction and not by an arbitrator." (*Id.* § 1.6.) But because the "conditions precedent to

6    arbitration" – *i.e.* the informal and formal resolution processes – only apply to customers, this

7    provision gives Coinbase the sole option to file suit in court against its customers based on an alleged

8    failure to meet these conditions.

9        Third, the Arbitration Clause selectively removes certain issues from arbitration in a manner

10   that is likely to favor Coinbase. Under the agreement, the arbitrator has no power to decide which

11   version of the User Agreement applies, precluding the arbitrator from considering formation and

12   validity challenges raised by consumers. (*Id.* § 1.6(4).) The arbitrator is similarly without power to

13   decide whether the waivers of class action rights and public injunctive relief contained in the User

14   Agreement are unlawful, precluding consumers from raising this defense in arbitration. (*Id.* § 1.6(1).)

15       These provisions allowing Coinbase preferential access to the court system are

16   unconscionable. *See Armendariz*, 24 Cal. 4th at 120 (provision that allowed employer to bring trade

17   secret claims in court while employees were forced to use arbitration for other claims was

18   unconscionable); *Mercuro v. Superior Ct.*, 96 Cal. App. 4th 167, 176 (2002) (arbitration clause that

19   exempted "claims for injunctive and/or other equitable relief for intellectual property violations"

20   was unfairly one-sided because these claims were "most likely" to be brought by stronger party).

21       **4.    The Arbitration Clause Imposes One-Sided Fee-Shifting Rules**

22       The Arbitration Clause contains one-sided fee-shifting rules that favor Coinbase. It provides

23   for fee shifting in favor of a party who successfully "obtains an order compelling arbitration," but

24   not for a party who successfully resists such a motion to compel. (Arbitration Clause § 1.7.) This

25   exception gives Coinbase a "free option" to move to compel arbitration – if it wins, it can seek an

26   award of fees, and if it loses, the customer gets no fees and must bear their own legal costs. Such

27   "unilateral fee-shifting provision[s]" are unconscionable. *Samaniego v. Empire Today LLC*, 205

28   Cal. App. 4th 1138, 1143 (2012) (agreement that awarded fees to only one party if it succeeded in

1    enforcing any rights under agreement was unconscionable).

2          **5.    The Arbitration Clause Permits Unilateral Amendments by Coinbase**

3          That Coinbase is the only party that can unilaterally modify the Arbitration Clause also

4    renders the provision unconscionable. *Ingle*, 328 F.3d at 1179 (arbitration agreement

5    unconscionable because, in part, "the provision affording [the drafting party] the unilateral power

6    to terminate or modify the contract is substantively unconscionable").

7          **6.    The Arbitration Clause Unlawfully Prohibits Public Injunctive Relief**

8          The Arbitration Clause also unconscionably prohibits public injunctive relief (Section 1.3)

9    in violation of *McGill v. Citibank, N.A.,* 2 Cal. 5th 945, 962 (2017) ("a provision in *any* contract

10   […] that purports to waive, in all fora, the statutory right to seek public injunctive relief under the

11   UCL, the CLRA, or the false advertising law is invalid and unenforceable").

12         **C.    The Unconscionable Terms of the Arbitration Clause Cannot be Severed**

13         Given the number of unconscionable requirements in the Arbitration Clause—each of

14   which renders the clause unenforceable—Coinbase cannot enforce its arbitration clause by severing

15   any unconscionable provisions. Under California law, a contract cannot be enforced unless every

16   unconscionable provision can be severed. Cal. Civ. Code § 1670.5(a). "[A]n arbitration agreement

17   permeated by unconscionability, or one that contains unconscionable aspects that cannot be cured

18   by severance, restriction, or duly authorized reformation, should not be enforced." *Armendariz*, 24

19   Cal. 4th at 126. In *Armendariz*, the California Supreme Court held that an arbitration agreement

20   was unenforceable and "permeated by unconscionability" where it contained "multiple defects

21   indicat[ing] a systemic effort to impose arbitration […] as an inferior forum" and the

22   unconscionable taint could not be removed by striking any "single provision." *Id.*

23         First, the terms of the Arbitration Clause and Coinbase's conduct show intent for arbitration

24   to operate as an inferior forum for customers. After it became clear that its prior arbitration clause

25   would be ruled unenforceable in *Bielski*, Coinbase sought to impose the new one-sided terms

26   described above. (See, *supra*, Section III.A.) The purpose and effect of all these one-sided

27   provisions is to close off any avenue for consumers to seek relief in court, while making it difficult

28   or impossible to obtain relief in arbitration. It would be impossible to sever the unconscionable

provisions given the pervasive number and purpose of these provisions. *MacClelland*, 2022 WL 2390997, at *16 (refusing to sever unconscionable provision in arbitration clause because "the number of unconscionable provisions, their nature, and the overall effect which is entirely foreseeable and intended" demonstrate that "the object of the Agreement is to force […] consumers into an inferior (and, in many circumstances, wholly ineffective) forum").

Second, there is no single provision that can be severed to "fix" the agreement. *Armendariz*, 24 Cal. 4th at 124-25. Given the number of the unconscionable provisions and their interconnectedness with the remainder of the User Agreement, eliminating the unconscionable provisions would require the Court to step into the role of re-writing the parties' agreement. As the court found in *Bielski*, "the arbitration agreement is 'simply too tainted to be saved through minor adjustments.'" 2022 WL 1062049, at *7. The only means of eliminating the unconscionability is to decline to enforce the Arbitration Clause at all.

In fact, the Arbitration Clause does not contain a severance provision beyond a limited clause allowing for the severance of the "Waiver of Class and Other Non-Individualized Relief," provision if found to be invalid by a court. (Arbitration Clause § 1.3.) There is nothing to suggest that the parties intended the other individual terms of the Arbitration Clause to be severable.[6] And even if there were a severance provision, "[t]he existence of the severability clauses does not change the fact that where an agreement is permeated by unconscionability, a court will not sever the unlawful provisions." *MacClelland*, 2022 WL 2390997, at *15.

## IV.    THE DELEGATION CLAUSE DOES NOT APPLY

Coinbase's argument that the purported "delegation clause" in the Arbitration Clause precludes the Court from deciding disputes regarding the enforceability of the agreement (Mot. at 10), also fails. "[U]nlike the arbitrability of claims in general, whether the court or the arbitrator decides arbitrability is an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise*." *Goldman, Sachs*, 747 F.3d at 738. "Thus, 'there is a presumption that courts will decide which issues are arbitrable.'" *Id.*

---

[6] There is no indication that the parties intended the severance provision in Section 9.3 of the User Agreement to govern the Arbitration Clause, which is located in a separate "appendix" and does not incorporate Section 9.3 by reference.

**A.      The Delegation Clause Does Not Cover Plaintiffs' Challenges to Arbitrability**

Coinbase argues that the Arbitration Clause delegates "gateway questions regarding the scope or enforceability of the arbitration clause" to an arbitrator. (Mot. at 10.) But this argument ignores the full text of the delegation provision, which carves out numerous exceptions to the arbitrator's authority – including multiple exceptions related to the arbitrability of disputes. (*Id.*) These exceptions cover all the challenges raised by Plaintiffs:

- Under subsection (1), "all Disputes arising out of or relating to" the Arbitration Clause's "Waiver of Class and Other Non-Individualized Relief" must be decided by a court rather than an arbitrator, "including any claim that all or part of the Section […] is unenforceable, illegal, void or voidable." Here, Plaintiffs challenge these provisions as unconscionable. (See, *supra,* Section III.B.6)

- Under subsection (3), "all Disputes about whether either party has satisfied any condition precedent to arbitration shall be decided only by a court of competent jurisdiction and not by an arbitrator." Here, Plaintiffs challenge the preconditions to arbitration as unconscionable. (See, *supra,* Sections III.B.2-3)

- Under subsection (4), "all Disputes about which version of the Arbitration Agreement applies shall be decided only by a court of competent jurisdiction and not by an arbitrator." Here, Plaintiffs dispute the effectiveness of Coinbase's amendment of its User Agreement and whether the Arbitration Clause was validly added. (See, *supra*, Section III.A-B.)

The language of the exceptions sweeps broadly, covering "all Disputes arising out of or relating to" or "all Disputes about" these subjects. Plaintiffs' challenges to the Arbitration Clause as a whole thus fall within these exceptions. Because the presumption that questions of arbitrability are for the court to determine can only be overturned where "the parties *clearly and unmistakably provide otherwise*" (*Goldman, Sachs*, 747 F.3d at 738), any ambiguity in whether an exception applies must be resolved in favor of determination by the court and not an arbitrator. *Hartley v. Superior Ct.*, 196 Cal. App. 4th 1249, 1258 (2011) ("When an agreement is ambiguous, 'the court and not the arbitrator should decide arbitrability so as not to force unwilling parties to arbitrate a matter they reasonably thought a judge, not an arbitrator, would decide.'").

At minimum, the Arbitration Clause's complex and contradictory scheme of delegating certain disputes to the arbitrator but at the same time providing for a "judicial determination" of damages and carving out various other issues and sub-issues related to arbitrability for judicial determination means that there is no "clear and unmistakable" agreement to delegate all

arbitrability disputes to the arbitrator. *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 792 (2012) ("where one contractual provision indicates that the enforceability of an arbitration provision is to be decided by the arbitrator, but another provision indicates that the *court* might also find provisions in the contract unenforceable, there is no clear and unmistakable delegation of authority to the arbitrator."). Coinbase's argument that the agreement's reference to AAA rules is sufficient fails because Arbitration Clause § 1.6 contains its own limits on the arbitrator's power that supersede AAA rules. *See* Arbitration Clause § 1.4 (AAA rules apply "as modified" by the agreement); *Goldman Sachs*, 747 F.3d at 741 (denying arbitration because "a contract between the parties can supersede the default obligation to arbitrate" under arbitral rules); *Ajamian*, 203 Cal. App. 4th at 792 (reference to AAA rules did not require arbitrator to decide unconscionability).

## B.   Plaintiffs' Formation Challenges Are Not Arbitrable

Plaintiffs' challenges to the formation of the Arbitration Clause as a contract are separately not subject to delegation because they go to the validity of the delegation clause itself. "Issues of contract formation may not be delegated to an arbitrator." *Suski v. Coinbase, Inc.*, 55 F.4th 1227 (9th Cir. 2022) (affirming denial of Coinbase's motion to compel arbitration because question of whether plaintiffs agreed to arbitration clause was for court, not arbitrator, to decide).

## C.   The Delegation Clause is Unconscionable

The delegation clause is separately unenforceable because it is unconscionable. Procedurally, the delegation clause was imposed on customers in the same coercive process as the Arbitration Clause itself. *Pinela*, 238 Cal. App. 4th at 243 (finding delegation clause unconscionable where "[t]he delegation clause was presented along with the rest of the Agreement on a take-it-or-leave-it basis."). And substantively, the delegation clause in Section 1.6 of the Arbitration Clause, is the source of many unconscionable provisions identified above with respect to the unconscionability of the Agreement as a whole. (See, *supra*, Sections III.B.1-3.) Where "unilaterality pervades both the delegation clause and the arbitration agreement as a whole," both are unenforceable. *Bielski*, 2022 WL 1062049, at *7. Because the delegation clause is part and parcel of Coinbase's efforts to impose arbitration on customers as an inferior forum for resolving their own disputes, neither the delegation clause nor the Arbitration Clause itself can be enforced.

1

## <u>CONCLUSION</u>

2          For the foregoing reasons, Coinbase's motion to compel arbitration should be denied.

3

4   Dated: January 6, 2023                          BRAUNHAGEY & BORDEN LLP

5

6                                                   _____

7                                                   Matthew Borden
                                                    *Attorney for Plaintiffs*
8                                                   *Manish Aggarwal and Mostafa El Bermawy*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION