1 Fred Norton (SBN 224725)
fnorton@nortonlaw.com
2 Bree Hann (SBN 215695)
bhann@nortonlaw.com
3 Nathan Walker (SBN 206128)
nwalker@nortonlaw.com
4 Gil Walton (SBN 324133)
gwalton@nortonlaw.com
5 Celine G. Purcell (SBN 305158)
cpurcell@nortonlaw.com
6 Josephine Petrick (SBN 280233)
jpetrick@nortonlaw.com
7 THE NORTON LAW FIRM PC
299 Third Street, Suite 200
8 Oakland, CA 94607
Telephone: (510) 906-4900

Attorneys for Defendants
COINBASE, INC. and
COINBASE GLOBAL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MANISH AGGARWAL and MOSTAFA EL BERMAWY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COINBASE, INC. and COINBASE GLOBAL, INC.,<br><br>Defendants. | Case No. 4:22-cv-04829-JSW<br><br>**DEFENDANTS COINBASE, INC. AND COINBASE GLOBAL, INC.'S SECOND STATEMENT OF RECENT DECISION**<br><br>Dept.: Courtroom 5, 2nd Floor<br>Judge: Hon. Jeffrey S. White |

Pursuant to Civil Local Rule 7-3(d)(2)—in connection with Defendants Coinbase Global, Inc. and Coinbase, Inc.'s (together "Coinbase's") pending Motion to Compel Arbitration and Stay Proceedings (Dkt. 21, the "Motion")—Coinbase respectfully submits the judicial Order Granting Motion to Compel Arbitration issued by the Honorable Michael W. Fitzgerald in *Jose Flores v. Coinbase, Inc., et al.*, Case No. 2:22-cv-08274-MWF-KS (C.D. Cal.), attached as Exhibit A. The attached Order was issued on April 6, 2023, after Coinbase filed its reply in support of its Motion in this case.

Respectfully submitted,

Dated: April 11, 2023

THE NORTON LAW FIRM PC

*/s/ Nathan Walker*
Nathan Walker

Attorneys for Defendants
COINBASE, INC. and
COINBASE GLOBAL, INC.

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 22-8274-MWF (KS) | **Date:** April 6, 2023 |
| **Title:** Jose Flores v. Coinbase, Inc. et al | |

**Present:** The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):**   ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS [37]

Before the Court is Defendants Coinbase, Inc., Coinbase Global, Inc., and Brian Armstrong's Motion to Compel Arbitration and Stay Proceedings (the "Motion"), filed on January 20, 2023. (Docket No. 37). Plaintiff Jose Flores filed an Opposition on January 22, 2023. (Docket No. 42). Defendants filed a Reply on February 13, 2023. (Docket No. 47).

The Motion was noticed to be heard on **February 27, 2023**. The Court read and considered the papers on the Motion and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); Local Rule 7-15. The hearing was therefore **VACATED** and removed from the Court's calendar.

The Motion is **GRANTED** and the action is **STAYED** pending the arbitration proceedings.

## I.   BACKGROUND

Coinbase, Inc. operates an online platform for buying, selling, and transferring cryptocurrencies. (Declaration of Suellen Black ("Black Decl.") (Docket No. 37-1) ¶ 2). Coinbase Global, Inc. is the parent company of wholly owned subsidiary Coinbase, Inc. (*Id.*). To access Coinbase's services, prospective users are required to create an account and accept the Coinbase User Agreement. (*Id.* ¶¶ 7, 10).

---
**CIVIL MINUTES—GENERAL**                                                                                                1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 22-8274-MWF (KS)**                               **Date:  April 6, 2023**
**Title:  Jose Flores v. Coinbase, Inc. et al**

Plaintiff transacted in a number of cryptocurrency assets on the Coinbase exchanges.  (Complaint (Docket No. 1) ¶ 7).  Plaintiff alleges that certain digital assets made available on Coinbase's cryptocurrency exchanges constitute unregistered securities, and that Coinbase has failed to register as a securities exchange or broker-dealer.  (*Id.* ¶¶ 5–6, 166–287).  Plaintiff further alleges that on November 19, 2021, his Coinbase account was suspended and he was denied access to funds in his Coinbase account.  (*Id.* ¶¶ 285–292).  Based on these allegations, Plaintiff asserts claims for violations of the Securities Exchange Act of 1934 (first through seventh causes of action), violations of California securities laws (eighth through tenth causes of action), and "Fraud in the Inducement, Misrepresentation, Concealment, Manipulation and Embezzlement" (eleventh cause of action).  (*Id.* ¶¶ 166–292).

Plaintiff created his account and first accepted the Coinbase User Agreement in 2021.  (Black Decl. ¶ 9).  In February 2022, Plaintiff accepted the updated terms of Coinbase's User Agreement dated January 31, 2022 ("2022 User Agreement").  (*Id.* ¶¶ 21–22).  Both user agreements contained broad arbitration agreements.  (*Id.* ¶¶ 10, 22).  Specifically, section 1.1 of the arbitration within the 2022 User Agreement states the following:

> Subject to the terms of this Arbitration Agreement, you and Coinbase agree that any dispute, claim, disagreements arising out of or relating in any way to your access to or use of the Services or of the Coinbase Site, any Communications you receive, any products sold or distributed through the Coinbase Site, the Services, or the User Agreement and prior versions of the User Agreement, including claims and disputes that arose between us before the effective date of these Terms (each, a 'Dispute') will be resolved by binding arbitration, rather than in court …. For purposes of this Arbitration Agreement, "Dispute" will also include disputes that arose or involve facts occurring before the existence of this or any prior versions of the User Agreement ….

(*Id.,* Ex. 7 (2022 User Agreement), Appendix 5 § 1.1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-8274-MWF (KS)            **Date:** April 6, 2023
**Title:** Jose Flores v. Coinbase, Inc. et al

Additionally, section 1.6 of the 2022 User Agreement clarifies the scope of disputes falling under the arbitrator's authority, stating as follows:

> The arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement . . . .

(*Id.* § 1.6).

Plaintiff does not dispute that he agreed to the 2022 User Agreement, nor does he deny that it contains an arbitration clause. (*See generally* Opposition). Instead, Plaintiff contends that he never read and never agreed to the User Agreement in a meaningful way and that the agreement is unconscionable and therefore unenforceable. (*Id.* at 6, 9–20).

Defendants argue that because the 2022 User Agreement expressly delegates "gateway" arbitration questions to the arbitrator—including questions about the enforceability, scope, and interpretation of the arbitration agreement itself—this Court need not evaluate the agreement's validity or whether its arbitration clause encompasses Plaintiff's claims. (Motion at 9).

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") requires the district courts to compel arbitration on all claims subject to arbitration agreements. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (citing 9 U.S.C. §§ 3, 4). The FAA creates a general presumption in favor of arbitration and requires the enforcement of a written agreement to arbitrate. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-25 (1991). A court must interpret arbitration provisions liberally, resolving doubts in favor of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-8274-MWF (KS)            **Date:** April 6, 2023
**Title:** Jose Flores v. Coinbase, Inc. et al

arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. 1, 24-25 (1983). The burden is on the party opposing arbitration to proffer evidence demonstrating that such an agreement is invalid. *See, e.g.*, *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000); *see also AT&T Tech., Inc. v. Communication Workers of Am.*, 475 U.S. 643, 650 (1986), *quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) ("[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.")

Under the FAA, a party moving to compel arbitration must show two things: "(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

The party seeking arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Norcia v. Samsung Telecoms. Am.*, LLC, 845 F.3d 1279, 1283 (9th Cir. 2017). Because the FAA favors arbitration, the burden is on the plaintiff to prove that the arbitration agreement is, in fact, not enforceable. *See Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) ("[T]hose parties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable.").

"[A]rbitration is fundamentally a matter of contract." *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011). "[G]ateway issues of arbitrability presumptively are reserved for the court." *Id.* at 987. Even though judicial resolution, not arbitration, is the presumptive forum for disputes about arbitrability, "parties may agree to delegate them to the arbitrator." *Id.* "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 22-8274-MWF (KS) | **Date:** April 6, 2023 |
| **Title:** Jose Flores v. Coinbase, Inc. et al | |

### III.     DISCUSSION

####     A.     Assent to Arbitration Agreement

"[A]rbitration is a matter of contract," *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citations omitted), and courts apply "general state-law principles of contract interpretation" to determine whether an agreement to arbitrate exists, *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (quotation omitted).  An arbitration agreement need only be in writing, and no signature by either party is necessary.  *See* FAA, 9 U.S.C. § 2; *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1439 (9th Cir. 1994).  Under California law, "[m]utual assent, or consent, of the parties is essential to the existence of a contract."  *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 943 (2022) (quotation omitted).

Plaintiff argues that he never agreed to the User Agreement "in a meaningful way."  (Opposition at 9).

However, it is undisputed that Plaintiff assented to the 2022 User Agreement by affirmatively clicking the blue button indicating his acceptance of the agreement.  (Black Decl. ¶¶ 18–22).  Before being asked to assent to the User Agreement, Plaintiff was sent the 2022 User Agreement in an email informing him of the upcoming update and encouraging him to "make sure you read the updated User Agreement."  (*Id.* ¶ 16).  The email specifically flagged that the update included changes to the arbitration agreement contained within the User Agreement.  (*Id.*).  All Coinbase customers who had not yet accepted the 2022 User Agreement on or after February 3, 2022, were routed to a landing page announcing that Coinbase had updated its User Agreement.  (*Id.* ¶ 18).  The landing page directed users to "review and accept [the] updated terms and conditions to continue using [their] Coinbase account."  (*Id.* ¶ 20).  Immediately beneath that prompt was a scroll-box containing the full text of the updated Agreement.  At the bottom of the page was a large blue button that users could click to "[a]ccept terms."  (*Id.*).  Coinbase's records reflect that on February 12, 2022, Flores logged into his account using Coinbase's website and accepted the updated 2022 User Agreement by clicking the large blue acceptance button.  (*Id.* ¶ 21).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 22-8274-MWF (KS)**                                **Date:  April 6, 2023**
**Title:  Jose Flores v. Coinbase, Inc. et al**

Coinbase's process for obtaining assent to the 2022 User Agreement constitutes a "clickwrap" contract, "in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use." *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014). "[C]ourts routinely find [clickwrap agreements] valid and enforceable because the user must affirmatively acknowledge receipt of the terms of the contract." *McLellan v. Fitbit, Inc.*, 2018 WL 1913832, at *2 (N.D. Cal. Jan. 24, 2018); *see also Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1165 (N.D. Cal. 2016); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017).

Here, Coinbase's process went a step further than the type of clickwrap contracts routinely upheld by placing the full text of the updated User Agreement before the user, rather than making the terms available only via hyperlink. (*See* Black Decl. ¶ 20). Such "scrollwrap" agreements are consistently found to be enforceable in California. *See Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 470, 289 Cal. Rptr. 3d 1 (2021). Accordingly, the Court determines that Plaintiff affirmatively manifested his assent to the 2022 User Agreement and a binding contract was formed. *See Nguyen*, 763 F.3d at 1175.

Additionally, Plaintiff argues that the 2022 User Agreement does not apply to his claims which arose before the 2022 User Agreement. (Opposition at 24). The Court is unpersuaded by this argument. The 2022 User Agreement expressly applies to any disputes arising out of or relating to the use of Coinbase's services, including "disputes that arose or involve facts occurring before the existence of this or any prior versions of the User Agreement." (Black Decl., Ex. 7 at Appendix 5). Parties such as Coinbase and Flores are free to expressly agree to an updated User Agreement that by its terms applies retroactively. *See* Cal. Civ. Code § 1698(a) ("A contract in writing may be modified by a contract in writing."); *Franco v. Greystone Ridge Condo.*, 39 Cal. App. 5th 221, 229-30, 252 Cal. Rptr. 3d 149 (2019) (arbitration agreement that expressly referred to claims that accrued before agreement was executed applied to such claims). The arbitration agreement in the 2022 User Agreement therefore applies to all of Plaintiff's claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-8274-MWF (KS)            **Date:** April 6, 2023
**Title:** Jose Flores v. Coinbase, Inc. et al

### B. Clear and Unmistakable Delegation Clause

Having determined that Plaintiff assented to the 2022 User Agreement, the question becomes whether there is clear and unmistakable evidence that the parties delegated arbitrability to the arbitrator. *First Options of Chi., Inc.,* 514 U.S. at 944.

Here, the 2022 User Agreement contains a delegation clause that delegates questions of arbitrability to the arbitrator:

> "The arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement . . ."

(Motion at 11; Black Decl., Ex. 7, Appendix 5, § 1.6). A delegation clause, which is "an agreement to arbitrate threshold issues concerning the arbitration agreement," constitutes clear and unmistakable evidence of an intent to delegate. *Momot*, 652 F.3d at 988 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010)).

Additionally, the 2022 User Agreement incorporates the American Arbitration Association ("AAA") rules. (Motion at 12; Black Decl., Ex. F, Appendix 5, § 1.4). The AAA rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim." (Motion at 12–13). Incorporation of arbitration rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability. *Brennan v. Opus Bank,* 796 F.3d 1125, 1130 (9th Cir. 2015); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("[I]ncorporation of the American Arbitration Association's arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-8274-MWF (KS)          **Date:** April 6, 2023
**Title:** Jose Flores v. Coinbase, Inc. et al

Accordingly, the Court determines that the parties clearly and unmistakably delegated the question of arbitrability to the arbitrator. Therefore, unless the Court finds that the delegation clause is unconscionable, as Plaintiff contends, or "in the absence of some other generally applicable contract defense, such as fraud [or] duress," the Court must enforce the delegation clause. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016).

### C. Unconscionability

A party seeking to invalidate a contractual provision as unconscionable must prove both procedural and substantive unconscionability. *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (*citing Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 114 (2000)). However, "[a] sliding scale is applied so that the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 178 (2015). When evaluating procedural unconscionability, courts focus on oppression or surprise that results from unequal bargaining power. *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1133 (2013). When evaluating substantive unconscionability, courts are more concerned with overly harsh or one-sided results. *Id.*

#### 1. Procedural Unconscionability

"Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013). The analysis for procedural unconscionability "begins with an inquiry into whether the contract is one of adhesion." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126, 251 Cal. Rptr. 3d 714 (2019) (quoting *Armendariz*, 24 Cal. 4th at 113) (internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-8274-MWF (KS)           **Date:** April 6, 2023
**Title:** Jose Flores v. Coinbase, Inc. et al

Generally, a contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 242, 190 Cal. Rptr. 3d 159 (2015) (quotation omitted). Where a contract is adhesive, the question shifts to "whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." *OTO*, 8 Cal. 5th at 126.

Plaintiff argues that the User Agreement clearly qualifies as a contract of adhesion. (Opposition at 18). Defendants do not dispute this but argue that this fact alone is not sufficient to show unconscionability. (Reply at 10). Defendants argue that California courts regularly find that form contracts are not unconscionable where consumers had "reasonable market alternatives." (*Id.* (citing *Fisher v. MoneyGram Int'l., Inc.*, 66 Cal. App. 5th 1084, 1095–96, 281 Cal. Rptr. 3d 771 (2021) (holding that there "can be no oppression establishing procedural unconscionability, even assuming unequal bargaining power and an adhesion contract, when the customer has meaningful choices"); *De La Torre v. CashCall, Inc.*, 5 Cal. 5th 966, 236 Cal. Rptr. 3d 353 (2018) ("[A] court must consider ... the availability of alternatives."))). Defendants contend that Flores could have used any number of cryptocurrency exchanges. (*Id.*).

To determine whether a contract of adhesion is oppressive and therefore procedurally unconscionable, California courts consider several factors, including (1) the relative bargaining power and sophistication of the parties, (2) the complaining parties' access to reasonable market alternatives, and (3) the degree to which an offending provision of a contract is "buried in a lengthy . . . agreement." *Shierkatz Rllp v. Square, Inc.*, Case No. 21-cv-08689-HSG, 2015 WL 9258082, *9 (N.D. Cal. Dec. 17, 2015).

Here, after balancing these factors, the Court finds a minimal degree of procedural unconscionability arising from the adhesive nature of the delegation clause. "While the relative bargaining power between the parties favors [Coinbase] and the . . User Agreement was presented on a take-it-or-leave-it basis, nothing in the record suggests that Coinbase was [the] only option for cryptocurrency services. And . . . the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 22-8274-MWF (KS) | **Date:** April 6, 2023 |
| **Title:** Jose Flores v. Coinbase, Inc. et al | |

[delegation] provision in the . . . User Agreement is clearly labeled ['Authority of the Arbitrator'] in bold print." *Alfia v. Coinbase Glob., Inc.*, No. 21-CV-08689-HSG, 2022 WL 3205036, at *4 (N.D. Cal. July 22, 2022); (Black Decl., Ex. F, Appendix 5, § 1.6).

### 2. Substantive Unconscionability

Substantive unconscionability focuses on the terms of the agreement and whether those are so "overly harsh" or "one-sided" as to "shock the conscience." *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002). "Although California courts have characterized substantive unconscionability in various ways, all of these formulations point to the central idea that unconscionability doctrine is concerned not with a simple old-fashioned bad bargain but with terms that are unreasonably favorable to the more powerful party." *Tompkins*, 840 F.3d at 1023 (citations and internal quotations omitted).

Plaintiff argues that the arbitration provision is one-sided because it requires users to submit to arbitration but imposes no obligation on Coinbase itself to submit disputes with users to binding arbitration. (Opposition at 15). Additionally, Plaintiff contends that there is no legitimate commercial need for the burdensome obstacles prior to arbitrating disputes that is required by Coinbase's tripartite complaint process. (*Id.* at 17–18). Plaintiff's arguments refer to the 2021 User Agreement, not the applicable 2022 User Agreement. The Court determines that Plaintiff has not met his burden of demonstrating substantive unconscionability.

The arbitration provision within the 2022 User Agreement appears to satisfy bilaterality requirements imposed by California law. The parties both agreed that "any dispute, claim, disagreements arising out of or relating in any way to your access to or use of the Services or of the Coinbase Site, any Communications you receive, any products sold or distributed through the Coinbase Site, the Services . . . will be resolved by binding arbitration." (Black Decl., Ex. 7 Appendix 5). "Any dispute" is expansive and includes claims that Coinbase might bring against users, as well as claims users bring against Coinbase. *See Serpa* v. *California Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 710, 155 Cal. Rptr. 3d 506 (2013) (finding agreement to arbitrate "any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-8274-MWF (KS)            **Date:** April 6, 2023
**Title:** Jose Flores v. Coinbase, Inc. et al

dispute" bilateral); *Roman v. Superior Ct.*, 172 Cal. App. 4th 1462, 1472, 92 Cal. Rptr 3d 153 (2009) (same for "all disputes"); *McManus v. CIBC World Markets Corp.*, 109 Cal. App. 4th 76, 84, 134 Cal. Rptr. 2d 446 (2003) (same). Additionally, the requirement that Plaintiff use Coinbase's formal complaint procedure (Black Decl., Ex. 7 § 7.2), which includes contacting Coinbase's support team and filing a complaint form asking for a description of the complaint before proceeding to arbitration, is not unduly onerous. *See Serpa*, 215 Cal. App. 4th at 710 (a "requirement that internal grievance procedures be exhausted before proceeding to arbitration is both reasonable and laudable"). The Court determines that this minimally burdensome process, which permits Coinbase an opportunity to fix customers problems before resorting to slower and more expensive arbitration, is not substantively unconscionable.

      In sum, the delegation provision of the 2022 User Agreement is not substantively unconscionable. Therefore, the delegation provision is enforceable, and the Court determines that Plaintiff's challenges to arbitrability have been delegated to the arbitrator.

      Accordingly, the Motion is **GRANTED**. Plaintiff is **ORDERED** to submit his claims to arbitration as provided by his agreement. 9 U.S.C. § 4. This action is **STAYED** pending the arbitration proceedings. The parties shall file a joint status report every 90 days apprising the Court of the status of the arbitration proceedings, with the first report due on July 6, 2023.

      IT IS SO ORDERED.