1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MANISH AGGARWAL and MOSTAFA
EL BERMAWY, on behalf of themselves
and all others similarly situated,

          Plaintiffs,

      v.

COINBASE, INC. and COINBASE
GLOBAL INC.,

          Defendants.

Case No.  22-cv-04829-JSW

**ORDER GRANTING MOTION TO
COMPEL ARBITRATION AND
STAYING CASE**

Re: Dkt. Nos. 21, 35

Now before the Court for consideration is the motion to compel arbitration filed by

Coinbase Global, Inc. and Coinbase, Inc. (together "Coinbase").  Having reviewed the parties'

papers, relevant legal authority, and record in this case, the Court hereby GRANTS the motion to

compel arbitration and STAYS all further litigation pending the completion of arbitration.[1]

**BACKGROUND**

Defendant Coinbase operates an online platform for buying, selling, transferring, and

storing cryptocurrencies.  (Dkt. No. 21-1, Declaration of Suellen Black ("Black Decl.") ¶ 2.)  To

access Coinbase's services, a user is required to create a Coinbase account and agree to Coinbase's

User Agreement.  (*Id.* ¶ 7.)  Plaintiffs Manish Aggarwal ("Mr. Aggarwal") and Mostafa El

Bermawy ("Mr. El Bermawy") (together "Plaintiffs") were previously both Coinbase users.  (*Id.* ¶

8.)  On December 18, 2017, Mr. El Bermawy created a Coinbase account and accepted the

Coinbase User Agreement that was in effect.  (*Id.*, Ex. 1.)  On February 8, 2021, Mr. Aggarwal

---

[1] The Court DENIES Plaintiffs' administrative motion for leave to file a sur-reply.  (Dkt. No. 35.)
The Court has reviewed all relevant legal authority and finds Plaintiffs' arguments redundant.

1   created a Coinbase account and accepted the Coinbase User Agreement that was in effect.  (*Id.*,

2   Ex. 3.)

3          Coinbase periodically updates its User Agreement.  (*Id.* ¶ 16.)  Coinbase emailed Mr.

4   Aggarwal on January 26, 2022 and Mr. El Bermawy on January 27, 2022, informing Plaintiffs of a

5   forthcoming update to the User Agreement, effective January 31, 2022 ("2022 User Agreement").

6   (*Id.* ¶ 17.)  Coinbase's email bore the subject line, "Update to Coinbase User Agreement."  The

7   body of the email contained a bulleted outline of the User Agreement updates present in the 2022

8   User Agreement:

United States District Court
Northern District of California

1   (*Id.* ¶ 20.)  Relevant here is the second bullet on the email that reads, "**Clarity on Dispute**

2   **Resolution:** We've revised our arbitration agreement to streamline the process for resolving

3   problems you may experience."  (*Id.*)  The email also contains the underlined text, "entire

4   agreement here," appearing in blue hyperlinked text.  (*Id.*)  A user who clicks the hyperlinked

5   "entire agreement here" is given access to the full terms of the 2022 User Agreement.  (*Id.* ¶ 21.)

6        If an existing Coinbase user had not yet logged into their Coinbase account to accept the

7   2022 User Agreement on or after February 3, 2022, they were routed to a landing page that

8   presented users, accessing Coinbase via the web or through a mobile app, with the terms of the

9   2022 User Agreement:



22   (Dkt. No. 21-2, Declaration of Hamzah Zia ("Zia Decl.") ¶ 6, Ex. 1.)  The landing page advised

23   users that Coinbase was updating the User Agreement.  (*Id.*)  The full text of the updated 2022

24   User Agreement was provided to Coinbase users in a scroll box.  (*Id.*)  Underneath the scroll box,

25   users were presented with a blue button labeled, "Accept terms."  (*Id.*)  If a user clicked the

26   "Accept terms" button, they agreed to the terms of the 2022 User Agreement.  (*Id.*)

27        A disclaimer appears, regarding Appendix 5 ("Arbitration Agreement"), in bold and all-

28   caps towards the top of the 2022 User Agreement that states:

United States District Court
Northern District of California

1

2

3

4

**APPENDIX 5 OF THIS AGREEMENT, CONTAIN[S] PROVISIONS GOVERNING HOW TO RESOLVE DISPUTES BETWEEN YOU AND COINBASE. APPENDIX 5 INCLUDES AN AGREEMENT TO ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS, THAT ALL DISPUTES BETWEEN YOU AND US SHALL BE RESOLVED BY BINDING AND FINAL ARBITRATION. APPENDIX 5 ALSO CONTAINS A CLASS ACTION AND JURY TRIAL WAIVER.**

5   (Black Decl., Ex. 8, Appx. 5.)  Section 1.1 ("Applicability of Arbitration Agreement") of the

6   Arbitration Agreement also states:

7

8

9

10

11

> Subject to the terms of this Arbitration Agreement, you and Coinbase agree that any dispute, claim, disagreements arising out of or relating in any way to your access to or use of the Services or of the Coinbase Site, any Communications you receive, any products sold or distributed through the Coinbase Site, the Services, or the User Agreement and prior versions of the User Agreement, including claims and disputes that arose between us before the effective date of these Terms (each, a '"Dispute") will be resolved by binding arbitration, rather than in court[.]

12   (*Id.*)  Also relevant is Section 1.6 ("Authority of Arbitrator") of the Arbitration Agreement, which

13   clarifies the scope of disputes falling under the arbitrator's authority:

14

15

16

> The arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement[.]

17   (*Id.*)

18          The American Arbitration Association's ("AAA") rules, including the AAA's "Consumer

19   Arbitration Rules," are incorporated into Section 1.4 ("Rules and Forum") of the Arbitration

20   Agreement.  (*Id.*)  Those rules state: "The arbitrator shall have the power to rule on his or her own

21   jurisdiction, including any objections with respect to the existence, scope, validity of the

22   arbitration agreement or to the arbitrability of any claim or counterclaim."  AAA Consumer

23   Arbitration Rules, R-14(a).  The AAA rules are not provided in the arbitration agreement but are

24   accessible on the AAA's website, https://www.adr.org/sites/default/files/Consumer%20Rules.pdf.

25          On February 4, 2022, Mr. El Bermawy logged into his Coinbase account via Coinbase Pro

26   iOS mobile app and agreed to the updated 2022 User Agreement.  (Zia Decl., Ex. 2.)  Similarly,

27   Mr. Aggarwal logged into his Coinbase account via Coinbase Pro iOS mobile app and agreed to

28   the updated 2022 User Agreement on February 5, 2022.  (*Id.*, Ex. 3.)

United States District Court
Northern District of California

1    Mr. Aggarwal alleges that in April 2022, hackers gained access to his Coinbase account

2   and "drained it of more than $200,000" of cryptocurrency.  (Dkt. No. 14, First Amended

3   Complaint ("FAC") ¶ 3.)  Mr. Aggarwal alleges that he attempted to alert Coinbase of the theft but

4   was instead routed through its "automated complaint process."  (*Id.*)  Similarly, Mr. El Bermawy

5   alleges that in July 2022, hackers robbed his account of cryptocurrency.  (*Id.* ¶ 4.)  Mr. El

6   Bermawy alleges that "Coinbase failed to assist [him] in recovering his stolen cryptocurrency" and

7   he "canceled his account."  (*Id.*)

8    On September 29, 2022, Plaintiffs filed their amended complaint.  (Dkt. No. 14.)  Plaintiffs

9   brought claims against Coinbase for: (i) violation of the Electronic Funds Transfer Act ("EFTA"),

10  15 U.S.C. § 1693 *et seq.*, (ii) violation of the EFTA and Regulation E Customer Service

11  Provisions, 15 U.S.C. § 1693f(f)(6) and 12 C.F.R. § 1005.11(a)(7), (iii) violation of the EFTA and

12  Regulation E Disclosure Provisions, 15 U.S.C. § 1693c and 12 C.F.R. § 1005.7, (iv) violation of

13  California Uniform Commercial Code Division 8, Cal. Com. Code § 8507(b), (v) bailment,

14  California Common Law and Civil Code §§ 1813, *et seq.*, (vi) conversion, (vii) breach of contract,

15  (viii) breach of implied covenant of good faith and fair dealing, (ix) negligence, (x) violation of

16  Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*, (xi) violation of California False

17  Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, (xii) violation of Unfair Competition

18  Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*., and (xiii) unjust enrichment.  Plaintiffs bring this

19  case on behalf of themselves, and all persons similarly situated.  (*Id.* ¶ 200.)   They seek

20  certification of the following class:

21          All current and former Coinbase users and/or consumers in the United
22          States who registered for a Coinbase account from April 1, 2021
            through such time as Class notice is given, who maintained funds
23          and/or cryptocurrency in their Coinbase accounts, and who were
            subsequently deprived of access to, or lost their funds and/or
24          cryptocurrency.

25  (*Id.* ¶ 107.)

26    Coinbase now moves the Court to compel Plaintiffs to arbitrate their claims.  The Court will

27  address additional facts as necessary in the analysis.

28

1      **ANALYSIS**

2    **A.    Applicable Legal Standards.**

3          The FAA establishes that arbitration agreements "shall be valid, irrevocable, and

4    enforceable, save upon such grounds as exist at law or in equity for the revocation of any

5    contract." 9 U.S.C. § 2.  A district court must compel arbitration under the FAA if it finds (i) a

6    valid agreement to arbitrate exists, and (ii) the agreement covers the dispute.  *Brennan v. Opus*

7    *Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537

8    U.S. 79, 84 (2002)).  The party moving to compel arbitration has the burden to prove that an

9    agreement to arbitrate exists by a preponderance of the evidence.  *Engalla v. Permanente Medical*

10   *Group, Inc.*, 15 Cal. 4th 951, 972 (1997).  The party challenging enforcement of an arbitration

11   agreement bears the burden of proving any fact necessary to its defense by a preponderance of the

12   evidence.  *Id.*

13         Under the FAA, parties may agree to have an arbitrator decide "'gateway' questions of

14   'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement

15   covers a particular controversy."  *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct.

16   524, 529 (2019) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).  The

17   FAA represents a "liberal federal policy favoring arbitration agreements," and courts must resolve

18   doubts concerning the scope of arbitrable issues in favor of arbitration.  *Moses H. Cone Mem'l*

19   *Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

20         Even so, "a party cannot be required to submit to arbitration any dispute which he has not

21   agreed so to submit."  *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574,

22   582 (1960).  Accordingly, a court must determine that a valid arbitration agreement exists before

23   referring a dispute to an arbitrator.  *Henry Schein*, 139 S. Ct. at 530.  Courts "should apply

24   ordinary state-law principles that govern the formation of contracts" to determine whether a valid

25   arbitration agreement exists.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

26   Thus, general contract defenses, such as fraud, duress, or unconscionability, can invalidate

27   arbitration agreements.  *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

28         When a district court finds that a valid arbitration agreement exists, it must then determine

United States District Court
Northern District of California

1    whether the parties contracted to delegate threshold arbitrability questions to an arbitrator by

2    "clear and unmistakable evidence." *Henry Schein*, 139 S. Ct. at 530 (quoting *First Options*, 514

3    U.S. at 944). Upon a finding that the parties clearly and unmistakably contracted to delegate

4    threshold arbitrability questions to an arbitrator, a district court may not rule on arbitrability

5    questions. *Id.*

6    **B.    Coinbase's Arbitration Agreement is Not Illusory.**

7          Plaintiffs argue that Coinbase's arbitration agreement is illusory, and therefore

8    unenforceable, because the arbitration agreement "permits Coinbase to unilaterally amend its

9    terms at any time, granting Coinbase unlimited power to amend the Arbitration Clause in its sole

10   discretion." (Dkt. No. 24, Plaintiff's Opposition ("Opp.") at 4:16-21.) "In California, 'it has long

11   been the rule that a provision in an agreement permitting one party to modify contract terms does

12   not, standing alone, render a contract illusory' because of the implied covenant of good faith and

13   fair dealing implicit in every contract[.]" *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240,

14   1250 (N.D. Cal. 2019) (quoting *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 706

15   (2013)). "In *24 Hour Fitness, Inc. v. Superior Ct.*, the California Court of Appeal held that a

16   provision in an employee handbook 'reserv[ing] the right to change any provision in this

17   [h]andbook at any time for any reason without advance notice, did not render the agreement

18   illusory." *DDC Logistics, Inc. v. Airways Freight Corp., Inc.*, 2016 WL 10829513, at *3 (C.D.

19   Cal. Sept. 7, 2016) (quoting *24 Hour Fitness, Inc. v. Superior Ct.*, 66 Cal. App. 4th 1199, 1214

20   (1998)). Since the "discretionary power to modify the terms of the [agreement] in writing

21   indisputably carries with it the duty to exercise that right fairly and in good faith," the court

22   reasoned, "the modification provision does not render the contract illusory." *24 Hour Fitness,*

23   *Inc.*, Cal. App. 4th at 541-42.

24         However, if "a [unilateral] modification provision expressly addresses whether contract

25   changes apply to claims that have accrued or are known to the employer, the covenant cannot

26   create implied terms that contradict the express language." *Peleg v. Neiman Marcus Grp., Inc.*,

27   204 Cal. App. 4th 1425, 1465 (2012) (citations omitted). If, on the other hand, a unilateral

28   modification provision "is silent as to whether contract changes apply to claims, accrued or

United States District Court
Northern District of California

7

1    known," the provision "is impliedly restricted by the covenant [of good faith and fair dealing] so

2    that changes do not apply to such claims." *Id.* (*cited with approval in Chess v. CF Arcis IX LLC*,

3    No. 20-CV-01625-CRB, 2020 WL 4207322, at *19 (N.D. Cal. July 22, 2020)).

4          Plaintiffs claim that Coinbase's Arbitration Agreement is not silent as to whether contract

5    modifications apply to claims, accrued or known.  Plaintiffs cite the "Applicability of Arbitration

6    Agreement" section of the Arbitration Agreement, which states:

7            Subject to the terms of this Arbitration Agreement, you and Coinbase
      agree that any dispute, claim, disagreements arising out of or relating
8            in any way to your access to or use of the Services or of the Coinbase
      Site, any Communications you receive, any products sold or
9            distributed through the Coinbase Site, the Services, or the User
      Agreement and prior versions of the User Agreement, including
10           claims and disputes that arose between us before the effective date of
      these Terms (each, a "Dispute") will be resolved by binding
11           arbitration, rather than in court[.]

12   (Black Decl., Ex. 8, Appx. 5.)  The "Applicability of Arbitration Agreement" section also states,

13   "For the purposes of this Arbitration Agreement, 'Dispute,' will also include disputes that arose or

14   involve facts occurring before the existence of this or any prior versions of the User Agreement as

15   well as claims that may arise after the termination of this User Agreement."  (*Id.*)  Plaintiffs rely

16   on *Peleg*, stating "[a]n arbitration agreement that expressly *exempts* all claims, accrued or known,

17   from contract changes is valid and enforceable without resort to the covenant."  204 Cal. App. 4th

18   at 1465.  "If, on the other hand, an arbitration agreement expressly applies a contract change to

19   such claims, the covenant cannot vary the plain language, and the agreement is illusory."  *Id.*

20         Coinbase argues that "the question is not whether *any* amendment to the broader

21   Arbitration Clause is silent to previously accrued claims, but only whether the *unilateral*

22   *amendment provision* is silent."  (Dkt. No. 30, Coinbase Reply 3:23-4:1-2.)  Coinbase also cites to

23   *Peleg*, stating, "[a] *unilateral modification provision* that is silent as to whether contract changes

24   apply to claims, accrued or known, is impliedly restricted by the covenant [of good faith and fair

25   dealing] so that changes do not apply to such claims[.]"  204 Cal. App. 4th at 1465 (emphasis

26   added).  Section 1.9 ("Modification") of Coinbase's Arbitration Agreement states:

27           Notwithstanding any provision in this User Agreement to the
      contrary, we agree that if Coinbase makes any future change to this
28           Arbitration Agreement, it will notify you.  Your continued use of the

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1

2

> Coinbase Site and/or Services, including the acceptance of products and services offered on the Coinbase Site following the posting of changes to this Arbitration Agreement constitutes your acceptance of any such changes.

3   (Black Decl., Ex. 8, Appx. 5.)  Coinbase argues that the Modification provision in its Arbitration

4   Agreement "is silent as to previously-accrued claims," and so does not "render the Arbitration

5   Clause illusory" under California contract law.  (Reply 3:18-19.)  The first page of the 2022 User

6   Agreement also contains overarching language that states: "**Amendment of these Terms:** We

7   may amend or modify this Agreement at any time by posting the revised agreement on the

8   Coinbase Site and/or providing a copy to you (a "**Revised Agreement**").  The Revised Agreement

9   shall be effective as of the time it is posted but will not apply retroactively."  (Black Decl., Ex. 8.)

10          The Court finds Coinbase's argument more persuasive.  The Court determines if a

11   *unilateral modification provision* is silent as to whether contract changes, accrued or known, is

12   impliedly restricted by the covenant of good faith and fair dealing, not the broader arbitration

13   agreement.  *See DDC Logistics, Inc.*, 2016 WL 10829513, at *4 ("Construing these [modification]

14   provisions in light of the covenant of good faith and fair dealing, they do not apply to accrued

15   claims and accordingly do not render the agreement illusory."); *24 Hour Fitness, Inc.* 66 Cal. App.

16   4th at 1214 (holding the modification provision did not render the contract illusory); *Harris v.*

17   *TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 390 (2016) (applying an implied covenant of good

18   faith in an employment contract with unilateral modification provisions).

19          This Court finds that Coinbase's unilateral contract modification provision is silent as to

20   whether contract changes apply to claims, accrued or known, so applying the covenant of good

21   faith and fair dealing, Coinbase's Arbitration Agreement is not illusory.

22   **C.     Delegation Clause.**

23          Plaintiffs do not dispute that they signed the Arbitration Agreement, including the

24   Delegation Clause.  However, Plaintiffs argue the Court should not compel arbitration because the

25   Delegation Clause does not cover Plaintiffs' challenges to arbitrability and is unconscionable.

26          **1.       The Parties Have Delegated Arbitrability to the Arbitrator.**

27          Coinbase argues the Arbitration Agreement delegates "gateway questions regarding the

28   scope or enforceability of the arbitration clause" to an arbitrator.  (Mot. at ¶ 10.)  Plaintiffs argue

1    that their "challenges to the Arbitration Clause as a whole" falls within the Delegation Clause's

2    carved out "exceptions to the arbitrator's authority." (Opp. 14:4-5.)

3            A delegation clause, which is "an agreement to arbitrate threshold issues concerning the

4    arbitration agreement," constitutes clear and unmistakable evidence of an intent to delegate.

5    *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (quoting *Rent-A-Center*, 561 U.S. at 68).

6    Using a delegation clause, parties can "agree to arbitrate gateway questions of arbitrability,"

7    including whether the parties' agreement to arbitrate "covers a particular controversy." *Rent-A-*

8    *Center*, 561 U.S. at 68-69. "When the parties' contract delegates the arbitrability question to an

9    arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry*

10   *Schein*, 139 S. Ct. at 528.

11           In *Mohamed v. Uber Techs., Inc.*, the Ninth Circuit considered an arbitration provision that

12   authorized the arbitrator to "decide issues relating to the *enforceability*, *revocability*, *or validity of*

13   *the Arbitration Provision*" and concluded the provision "clearly and unmistakably" indicated the

14   parties intended that the arbitrator would "decide the threshold question of arbitrability." 848 F.3d

15   1201, 1209 (9th Cir. 2016) (emphasis added). The Ninth Circuit has also concluded that assigning

16   issues of "validity or application" to the arbitrator constitutes clear and unmistakable evidence of

17   an intent to delegate. *See Momot*, 652 F.3d at 988.

18           Here, the Authority of Arbitrator section of Coinbase's Arbitration Agreement provides:

19               The arbitrator shall have exclusive authority to resolve any Dispute,
                 including, without limitation, disputes arising out of or related to the
20               interpretation or application of the Arbitration Agreement, including
                 the enforceability, revocability, scope, or validity of the Arbitration
21               Agreement or any portion of the Arbitration Agreement[.]

22   (Black Decl., Ex. 8, Appx. 5.) This language is substantially similar to the language that the Ninth

23   Circuit deemed was clear and unmistakable in both *Mohamed* and *Momot*. The Court concludes

24   that Plaintiffs agreed to delegate the issue of arbitrability to the arbitrator.

25           Nevertheless, Plaintiffs contend that their claims fall within the Delegation Clause's carved

26   out exceptions to the arbitrator's authority, and so must be decided by this Court. Plaintiffs also

27   argue that any ambiguity regarding whether an exception applies must be resolved in favor of

28   determination by the court and not an arbitrator. *See Hartley v. Superior Ct.*, 196 Cal. App. 4th

United States District Court
Northern District of California

10

1    1249, 1258 (2011). In *Hartley*, the California Court of Appeal found a severability clause that

2    used the term "trier of fact of competent jurisdiction," rather than the term "arbitrator," indicated

3    "the court ha[d] authority to decide whether an arbitration provision is unenforceable." *Id.* at

4    1258. The Court ruled that "[w]hen an agreement is ambiguous, "the court and not the arbitrator

5    should decide arbitrability so as not to force unwilling parties to arbitrate a matter they reasonably

6    thought a judge, not an arbitrator, would decide." *Id.* (citing *Dream Theatre, Inc. v. Dream

7    Theatre*, 124 Cal. App. 4th 547, 552 (2004) (internal quotation and citation omitted)).

8         The Court concludes that the facts of this case are distinguishable from *Hartley*. The

9    Authority of Arbitrator section of Coinbase's Arbitration Agreement clearly states, "The

10   *arbitrator* shall have exclusive authority to resolve any Dispute[.]" (Black Decl., Ex. 8, Appx. 5.)

11   Here, no ambiguity exists as to whether the parties delegated the issue of arbitrability to the

12   arbitrator.

13        Regarding the issue of carved out exceptions to the arbitrator's authority, "[n]umerous

14   courts in this circuit have found that despite a carveout, the question of arbitrability, even on the

15   subject of what has been carved out, must be decided by the arbitrator." *SteppeChange LLC v.

16   VEON Ltd.*, 354 F. Supp. 3d 1033, 1044 (N.D. Cal. 2018); *see Oracle Am., Inc. v. Myriad Grp.

17   A.G.*, 724 F.3d 1069, 1076-77 (9th Cir. 2013) (holding that the determination of whether claims

18   fell within the carve-out of the arbitration agreement was reserved for the arbitrator); *Bitstamp Ltd.

19   v. Ripple Labs, Inc.*, No. 15-CV-01503-WHO, 2015 WL 4692418, at *5 (N.D. Cal. Aug. 6, 2015)

20   (finding that the assertion of arbitrability even with respect to claims that were "carved out" of the

21   agreement was not "wholly groundless" given the parties' agreement to arbitrate "any dispute,

22   claim or controversy arising out of th[e] Agreement"); *Pearl v. Coinbase Glob., Inc.*, No. 22-CV-

23   03561-MMC, 2023 WL 1769190, at *7 (N.D. Cal. Feb. 3, 2023) ("Under the plain language of the

24   Delegation Clause [in Coinbase's 2022 User Agreement], the question of whether the above-

25   referenced unconscionability issues are, in fact, carved out of the Delegation Clause is, itself, a

26   question for the arbitrator."); *Dillion v. BET Info. Sys., Inc.*, No. 18-CV-04717-JST, 2019 WL

27   12238059, at *5 (N.D. Cal. Feb. 19, 2019) ("Where the parties have clearly and unmistakably

28   delegated questions of arbitrability, courts have found that determining the scope of a carve-out

United States District Court
Northern District of California

11

1    provision falls within that delegation without requiring additional evidence of intent to delegate

2    that specific question.").

3         Also, the Ninth Circuit has recognized that virtually every circuit to have considered

4    whether incorporation of the AAA rules has constituted clear and unmistakable evidence that the

5    parties agreed to arbitrate arbitrability had determined that incorporation of the AAA rules meets

6    the clear and unmistakable threshold.  *See Oracle America, Inc.*, 724 F.3d at 1074; *Brennan*, 796

7    F.3d at 1130 ("[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that

8    contracting parties agreed to arbitrate arbitrability."); *see also Fallo v. High-Tech Inst.*, 559 F.3d

9    874, 878 (8th Cir. 2009) ("[W]e conclude that the arbitration provision's incorporation of the

10   AAA Rules . . . constitutes a clear and unmistakable expression of the parties' intent to leave the

11   question of arbitrability to an arbitrator.").  Coinbase incorporated the AAA rules into their

12   Arbitration Agreement.  "The arbitration will be administered by the American Arbitration

13   Association ("AAA"), in accordance with the Consumer Arbitration Rules (the "AAA Rules")

14   then in effect[.]"  (Black Decl., Ex. 8, Appx. 5.)  The referenced AAA rules in the Coinbase

15   Arbitration Agreement expressly provide "[t]he arbitrator shall have the power to rule on his or

16   her own jurisdiction, including any objections with respect to the existence, scope, or validity of

17   the arbitration agreement or to the arbitrability of any claim or counterclaim."  AAA Consumer

18   Arbitration Rules, R-14(a).

19        Accordingly, the Court finds the parties clearly and unmistakably agreed to submit

20   arbitrability issues to an arbitrator.  "[A] court must enforce an agreement that, as here, clearly and

21   unmistakably delegates arbitrability questions to the arbitrator, the only remaining question is

22   whether the particular agreement to *delegate* arbitrability – the Delegation Provision – is itself

23   unconscionable."  *Brennan*, 796 F.3d at 1132.

24        **2.       The Delegation Clause is Not Unconscionable.**

25        In *Rent-A-Center*, the Supreme Court held that delegation clauses are valid, "'save upon

26   such grounds as exist at law or in equity for the revocation of any contract.'"  561 U.S. at 70

27   (quoting U.S.C. § 2); *accord Malone v. Superior Court*, 226 Cal. App. 4th 1551, 1559-60 (2014).

28   "Where a delegation provision exists, courts first must focus on the enforceability of that specific

United States District Court
Northern District of California

1    provision, not the enforceability of the arbitration as a whole."  *Brice v. Haynes Invs., LLC*, 13

2    F.4th 823, 827 (9th Cir. 2021).

3         Under California law, a contract provision is unenforceable if it was "unconscionable at the

4    time it was made."  Cal. Civ. Code § 1670.5(a); *see also Circuit City Stores, Inc. v. Adams*, 279

5    F.3d 889, 892 (9th Cir. 2002).  To show that the delegation clause is unconscionable, Plaintiffs

6    bear the burden to show the delegation clause is procedurally and substantively unconscionable.

7    *Armendariz v. Found. Health Psychare Serv., Inc.*, 24 Cal. 4th 83, 114-15 (2000); *see also*

8    *Malone*, 226 Cal. App. 4th at 1561.  The Court evaluates the presence of procedural and

9    substantive unconscionability on a "sliding scale."  *Malone*, 226 Cal. App. 4th at 1561.  "[T]he

10   more substantively oppressive the contract term, the less evidence of procedural unconscionability

11   is required to come to the conclusion that the term is unenforceable, and vice versa."  *Armendariz*,

12   24 Cal. 4th at 114.  A court must find that a contract is both procedurally and substantively

13   unconscionable before it can exercise its discretion to refuse to enforce a contract.  *Id.*

14             **a.**     **Procedural Unconscionability.**

15        Plaintiffs contend that the Delegation Clause of Coinbase's 2022 User Agreements is

16   procedurally unconscionable for the same reasons as the Arbitration Agreement.  Plaintiffs argue

17   that the Delegation Clause is procedurally unconscionable because (1) Coinbase presented the

18   2022 User Agreement on a "take-it-or-leave-it" basis without an opportunity to negotiate, making

19   it a contract of adhesion, (2) it is oppressive, and (3) it is unfairly surprising.

20        Procedural unconscionability "concerns the manner in which the contract was negotiated

21   and the circumstances of the parties at that time.  The element focuses on oppression or surprise."

22   *Gatton v. T-Mobile, USA, Inc.*, 152 Cal. App. 4th 571, 581 (2007) (quotations omitted); *see*

23   *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) ("Procedural

24   unconscionability concerns the manner in which the contract was negotiated and the respective

25   circumstances of the parties at that time, focusing on the level of oppression and surprise involved

26   in the agreement.").  "The analysis for procedural unconscionability 'begins with an inquiry into

27   whether the contract is one of adhesion.'"  *Flores v. Coinbase, Inc.*, No. CV 22-8274-MWF (KS),

28   2023 WL 3564756, at *5 (C.D. Cal. Apr. 6, 2023) (quoting *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111,

United States District Court
Northern District of California

1    126 (2019)).

2         Plaintiffs characterize the Delegation Clause as a "contract of adhesion" because

3    "Coinbase presented it on a 'take-it-or-leave-it' basis without an opportunity to negotiate." (Opp.

4    6:14-15.)  A contract of adhesion is a "standardized contract, which, imposed and drafted by the

5    party of superior bargaining strength, relegates to the subscribing party only the opportunity to

6    adhere to the contract or reject it."  *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227,

7    246 (2015).  "To determine whether a contract of adhesion is oppressive and therefore

8    procedurally unconscionable, California courts consider several factors, including: (1) the relative

9    bargaining power and sophistication of the parties, (2) the complaining parties' access to

10   reasonable market alternatives, and (3) the degree to which an offending provision of a contract is

11   'buried in a lengthy . . . agreement.'"  *Donovan v. Coinbase Glob., Inc.*, No. 22-CV-02826-TLT,

12   2023 WL 2124776, at *4 (N.D. Cal. Jan 6, 2023) (quoting *Shierkatz Rllp v. Square, Inc.*, 2015 WL

13   9258082, at *9 (N.D. Cal. Dec. 17, 2015) (internal quotation and citation omitted)).

14        "Here, although 'the relative bargaining power between the parties favors [Coinbase] and

15   the . . . [2022] User Agreement was presented on a take-it-or-leave-it basis, nothing in the record

16   suggests that Coinbase was Plaintiffs' only option for cryptocurrency services[.]'"  *Pearl v.*

17   *Coinbase Glob., Inc.*, No. 22-CV-03561-MMC, 2023 WL 1769190, at *7 (N.D. Cal. Feb. 3, 2023)

18   (quoting *Alfia v. Coinbase Glob., Inc.*, No. 21-CV-08689-HSG, 2022 WL 3205036, at *4 (N.D.

19   Cal. July 22, 2022)).  "There can be no oppression establishing procedural unconscionability, even

20   assuming unequal bargaining power and an adhesion contract, when the customer has meaningful

21   choices." *Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1096 (2021); *see Darnaa, LLC*

22   *v. Google, Inc.* No. 15-cv-03221-RMW, 2015 WL 7753406, at *8 (N.D. Cal. Dec. 2, 2015)

23   (holding that YouTube's terms of service created only "marginal" procedural unconscionability

24   where the terms were not hidden and performer had other means of publicizing her music video).

25        Plaintiffs also argue the Delegation Clause is "unfairly surprising because it is hidden in

26   'Appendix 5' of a 22,000-word agreement, along with the requirement that users cross-reference

27   other sections earlier in the User Agreement to ascertain its meaning[.]" (Opp. 7:9-11.)  Towards

28   the top of the 2022 User Agreement, a disclaimer in bold and all-caps states, "**APPENDIX 5 OF**

United States District Court
Northern District of California

1    **THIS AGREEMENT, CONTAIN[S] PROVISIONS GOVERNING HOW TO RESOLVE**

2    **DISPUTES BETWEEN YOU AND COINBASE.**" (Black Decl., Ex. 8.) The Delegation

3    Clause in the 2022 User Agreement is clearly labeled "Authority of the Arbitrator" in bold print.

4    (*Id.*)

5        The Court finds, after balancing these factors, a minimal degree of procedural

6    unconscionability arising from the adhesive nature of the Delegation Clause.

### b.    Substantive Unconscionability.

8        Plaintiffs contend that the Delegation Clause of Coinbase's 2022 User Agreements is

9    substantively unconscionable for the same reason as the Arbitration Agreement. Plaintiffs claim

10   that the Delegation Clause is substantively unconscionable because it "is the source of many

11   unconscionable provisions identified above with respect to the unconscionability of the

12   [Arbitration] Agreement as a whole." (Opp. 15:23-24.)

13       "Where a plaintiff's unconscionability challenge is directed not to 'the delegation

14   provision specifically,' but, rather, to the '[arbitration] [a]greement as a whole,' the Court 'must

15   enforce' the delegation provision and leave such challenges 'for the arbitrator.'" *Pearl*, 2023 WL

16   1769190, at *7 (quoting *Rent-A-Center*, 561 U.S. at 72); *see also Brennan*, 796 F.3d at 1133

17   (holding, where no argument "specific to the delegation provision" is made, unconscionability

18   challenge is "for the arbitrator"). Plaintiffs have failed to demonstrate that the Delegation Clause

19   in the Arbitration Agreement is substantively unconscionable.

20       Also, other courts in this district have concluded that the arbitration provision and

21   delegation clause of Coinbase's 2022 User Agreement are not unconscionable. *See, e.g.*, *Pearl*,

22   2023 WL 1769190, at *6-7 (finding no procedural or substantive unconscionability in the

23   arbitration provision's delegation clause of the 2022 Coinbase User Agreement); *Donovan*, 2023

24   WL 2124776, *3-5 (granting Coinbase's motion to compel arbitration under 2022 User

25   Agreement; finding said agreement contained "minimal" procedural unconscionability); *Alfia*,

26   2022 WL 3205036, at *3-4 (finding no unconscionability in the arbitration provision of the 2017

27   Coinbase User Agreement); *see also Kattula v. Coinbase Glob., Inc.*, No. 1:22-CV-3250-TWT,

28   2023 WL 4373385, at *3 (N.D. Ga. July 6, 2023) (citing cases). Also, the District Court for the

United States District Court
Northern District of California

15

1    Central District of California has concluded, "the delegation provision of the 2022 User

2    Agreement is not substantively unconscionable.  Therefore, the delegation provision is

3    enforceable, and the Court determines the Plaintiff's challenges to arbitrability have been

4    delegated to the arbitrator." *Flores*, 2023 WL 3564756, at *7.

5            Plaintiffs and Coinbase effectively delegated the issue of arbitrability to the arbitrator and

6    because the Court finds the Delegation Clause is not substantively unconscionable, it is

7    enforceable.  The Court therefore compels arbitration.

**CONCLUSION**

9            For the reasons stated, the Court GRANTS Coinbase's motion to compel arbitration and

10   STAYS all further litigation pending completion of arbitration.  The parties shall file a joint status

11   report every 180 days apprising the Court of the status of arbitration proceedings, including when

12   the stay may be lifted.  The parties shall alert the Court within five court days of the completion of

13   arbitration.

14        **IT IS SO ORDERED.**

15   Dated:  August 2, 2023

16                                                        _____

17                                                        JEFFREY S. WHITE
                                                         United States District Judge

United States District Court
Northern District of California

16